**Clarence W. HAWK, Petitioner–Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent–Appellant.**

No. 21177.

Missouri Court of Appeals, Southern District, Division Two.

April 21, 1997.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

Douglas W. Hennon, Carson & Coil, P.C., Jefferson City, for respondent.

SHRUM, Judge.

The Director of Revenue ("Director") appeals from the judgment of the trial court reinstating Clarence W. Hawk's driving privileges. Hawk's license had been revoked pursuant to § 577.041 for his alleged refusal to submit to a chemical test to determine his blood alcohol concentration. We affirm the trial court's judgment of reinstatement.[1]

■ Director's sole contention on appeal is that "the uncontroverted evidence reflects that [Hawk] refused to submit to a chemical test to determine his blood alcohol concentration." In a court-tried case, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is

---

1. All references to statutes are to RSMo 1994 unless otherwise stated.

against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo.banc 1976); *Snow v. Director of Revenue*, 935 S.W.2d 383, 385[1] (Mo.App.1996).

■ In assessing if there is substantial evidence, we must defer to the trial court on factual issues and cannot substitute our judgment for that of the trial judge. *Thurmond v. Director of Revenue*, 759 S.W.2d 898, 899 (Mo.App.1988). Such deference is not limited to the issue of credibility of witnesses, but also to the conclusions of the trial court. *Kitchens v. Missouri Pacific Railroad Co.*, 737 S.W.2d 219, 222 (Mo.App.1987).

■ Appellate courts view the evidence in the light most favorable to the trial court's judgment, *Thurmond*, 759 S.W.2d at 899, and we deem all facts to have been found in accordance with the result reached by the trial court. *Askins v. James*, 642 S.W.2d 383, 386[2] (Mo.App.1982). A trial court is accorded wide discretion even if there is evidence that would support a different result. *Thurmond*, 759 S.W.2d at 899. In a driver's license revocation case, a trial court has the prerogative when weighing witness credibility, to accept or reject all, part, or none of the testimony of any witness. *Id.*

On December 30, 1995, Hawk was arrested in Camden County for driving while intoxicated. After Hawk's driving privileges were revoked for allegedly refusing to submit to a chemical test, he asked for, and was granted, a hearing concerning the revocation. *See* § 577.041.4. Reviewing a license revocation, the trial court was required to determine (1) whether the person was arrested; (2) whether the arresting officer had reasonable grounds to believe the person was driving while intoxicated; and (3) whether the person refused to submit to testing. § 577.041.4; *Snow*, 935 S.W.2d at 385. However, Hawk and Director stipulated to numerous facts surrounding Hawk's arrest. After the stipulations were announced, counsel for the litigants told the trial judge that the only issue he had to decide was whether Hawk refused to submit to a chemical test.

■ Case law establishes that a refusal to submit to a chemical test need not be shown by the driver's express refusal upon the initial request. *Chapman v. McNeil*, 740 S.W.2d 701, 703[2] (Mo.App.1987) As more fully explained by our supreme court:

"There is no mysterious meaning to the word 'refusal'. In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accompanied by verbally saying, 'I refuse', or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal."

*Spradling v. Deimeke*, 528 S.W.2d 759, 766[13] (Mo.1975).

■ Here, there are differing versions of what happened after Hawk was arrested on December 30, 1995. Trooper Keith Howery (Howery) testified that once they arrived at the sheriff's office, he asked Hawk to submit to a breathalyzer test. When asked about Hawk's response to that request, Howery stated: "He attempted to take the test." Howery said that he advised Hawk of the Missouri Implied Consent Law and then instructed him to blow into the machine. Howery indicated that, while he told Hawk to blow into the breathalyzer for "an allotted amount of time," Hawk only "puffed" into it and continued only to "puff" when asked to repeat the test. Though Howery claimed the test was inadequate, the ascending reading on the breathalyzer read .12 when Hawk "puffed" into it. Howery said he advised Hawk that not blowing into the machine for an adequate amount of time was a failure. He testified that Hawk replied, "I took your test."

Howery stated that he again informed Hawk of the Implied Consent Law and asked Hawk to take a blood test. He claimed that Hawk replied, "I've taken your test." Howery responded negatively when asked if he made any further attempts to get Hawk to take a blood test that evening.

Hawk testified that he submitted to the breathalyzer and saw a reading of .12. Specifically, Hawk stated that he complied with the trooper's requests that he take the breathalyzer test and did everything that the trooper asked of him with regard to that test. Hawk characterized the test as "valid," noting that the machine registered a .12 reading. Hawk explained that he felt the test was adequate since the machine registered more than .10. He further stated that he repeatedly complied with Howery's request to blow additional air into the breathalyzer. In regard to Howery's assertions that he puffed into the machine, Hawk testified as follows:

"Q. Do you recall [Howery] telling you that you would have to blow into the machine until he told you otherwise?

"A. To that effect. I can't remember the specific words that were used.

"Q. And were you able to comply with that?

"A. I don't think it was a matter of whether I was able to or not. I did comply by submitting to the breathalyzer and blowing in it until it registered. And it registered more than .10."

Although Hawk conceded that Howery never seemed to be satisfied with his efforts, Hawk insisted: "I did, in fact, blow into the breathalyzer[ ]" and "exhaled into the machine as [I] was instructed to do." Moreover, Hawk testified that "I . . . voluntarily and intentionally and knowingly submitted to the breathalyzer." Hawk denied that Howery ever instructed him as to the length of time he was to blow into the machine.

In its judgment, the trial court found "from credible evidence adduced" that Hawk did not refuse to submit to chemical testing. The court then ordered Hawk's license reinstated.

■ The foregoing evidence left a question of fact as to whether Hawk refused to cooperate in the taking of the breathalyzer and thereby refused to take the test under § 577.041. See Oliver v. McNeill, 767 S.W.2d 568, 569. See also Askins, 642 S.W.2d at 386. If the trial court believed the testimony of Hawk, there was sufficient evidence to find that he did not refuse to take the breath test. Contrarily, had the trial court believed all of Howery's testimony it could reasonably have found that Hawk knowingly blew into the machine in a manner that caused it not to function; hence, there was also evidence to support a finding that Hawk refused. See Chapman, 740 S.W.2d at 703. However, the fact that there was evidence that would support a different result or that we might have decided differently does not mandate reversal. Thurmond, 759 S.W.2d at 899. Decisions as to the credibility of witnesses are for the trial judge, and we must defer to his findings and conclusions. Oliver, 767 S.W.2d at 569. We have reviewed the record and find no abuse of the trial court's discretion in its implicit finding that Hawk did not refuse to take the breathalyzer test.

■ Director, in apparent recognition of the deference we must give to the trial court's finding on whether Hawk refused the breath test, nevertheless claims that there was uncontroverted evidence that Hawk refused to submit to a blood test. Section 577.020.2 provides that "[t]he implied consent to submit to the chemical tests listed . . . shall be limited to not more than two such tests arising from the same arrest, incident or charge." An arrestee who comes within the provision of § 577.020 does not have a choice of which chemical test he will take. See Snow, 935 S.W.2d at 385[2].

■ Director's claim of uncontroverted refusal to take a blood test is based on Howery's testimony that he asked Hawk to submit to blood testing, to which Hawk allegedly answered: "I've already taken your test." The gist of Director's argument is that Hawk's alleged response indicated only a qualified or conditional consent or refusal and amounted to a volitional failure to do what was necessary in order that the test could be performed; hence it was a refusal. See Spradling, 528 S.W.2d at 759, 766. Continuing, Director maintains that Hawk never refuted Howery's testimony concerning Hawk's alleged response to the request for a blood test. Thus, "the court below erred as a matter of law in setting aside the revocation, since he [Hawk] did refuse the blood test."

To support this later argument, Director cites *Reinert v. Director of Revenue*, 894 S.W.2d 162 (Mo.banc 1995) and *Renfro v. Director of Revenue*, 927 S.W.2d 945 (Mo. App.1996), cases standing for the proposition that deference to a trial court's findings is not required where none of the evidence is controverted and the case is virtually one of admitted facts or where there is no conflict in the evidence. However, circumstances that existed in *Reinert* and *Renfro* do not exist in this case.

Here, there was a conflict in the evidence concerning the breath test and other events that occurred on the evening of Hawk's arrest. In deciding that Hawk had not refused chemical testing, the trial court clearly resolved issues of witness credibility adversely to the Director. For instance, where Howery's testimony was controverted by that of Hawk, i.e., concerning the breathalyzer test, the trial judge clearly believed Hawk's testimony and disbelieved Howery's evidence. It was also within the prerogative of the trial court to reject or disbelieve Howery's testimony about Hawk's alleged response to the blood test request. *See Thurmond*, 759 S.W.2d at 899.

Under the circumstances, Director's reliance on *Reinert* and *Renfro* is misplaced. What Director suggests is that the trial judge was compelled as a matter of law to believe Howery's testimony when it was uncontroverted even though it is clear that the judge disbelieved Howery's testimony when it was controverted. Such an argument is not logical and is not supported by *Reinert*, *Renfro*, or other authority. To the contrary, when any part of the testimony of a witness can reasonably be viewed as inaccurate or inconsistent, the usual rule attends and we give deference to the trial court in its resolution of all witness credibility questions. *Thurmond*, 759 S.W.2d at 899.

The Director had the burden of proof at trial to show Hawk's refusal to take a chemical test. *Askins*, 642 S.W.2d at 385[1]. It is not necessary for this court to decide whether the answer that Howery attributed to Hawk would have amounted to a refusal. Hawk never admitted giving that answer. Whether Hawk gave the answer ascribed to him by Howery was for the trial court to decide. Having resolved the issues of credibility adversely to Director, the trial court did not err in ordering reinstatement of Hawk's license. *See Thurmond*, 759 S.W.2d 898; *Oliver*, 767 S.W.2d 568.[2]

The judgment of the trial court is affirmed.

CROW, P.J., and MONTGOMERY, C.J., concur.

PARRISH, J. recuses.

---

2. The several cases cited by Director are factually dissimilar and do not support reversal of this case. For instance, in *Borgen v. Director of Revenue*, 877 S.W.2d 172 (Mo.App.1994), the trial court ruled for the licensee at the close of Director's case; hence, the licensee never adduced evidence. Remand was ordered to enable licensee to present any evidence that might undermine or contradict Director's case. *Id.* at 175. In *Snow*, 935 S.W.2d 383, the only evidence came from the arresting officer. The officer's testimony included this: At the hospital, Snow said: "You're not taking blood from me." *Id.* at 384. Unlike this case, witness credibility was not an issue in *Snow*. The trial court in *Snow* was reversed because it erroneously applied the law by not recognizing that § 577.020 allowed the officer to request more than one of the statutory tests. In *Turner v. Director of Revenue*, 829 S.W.2d 671 (Mo.App.1992), an order of reinstatement was reversed where a trial court found the policeman's testimony credible that the driver initially refused a blood test. *Id.* at 672. The *Turner* court explained: "[T]he driver's subsequent request or offer, at a later time, to submit to the same or another chemical test does not alter his earlier refusal...." *Id.* at 673[3]. Those are not the facts here. In *Cartwright v. Director of Revenue*, 824 S.W.2d 38 (Mo.App. 1991), "[t]he question presented [was] not one of credibility but whether or not the refusal to take a test must be knowing." *Id.* at 40. Contrarily, credibility is the issue in this case. Finally, in *Spradling*, 528 S.W.2d 759, *Stewart v. McNeill*, 703 S.W.2d 97 (Mo.App.1985), and *Chapman*, 740 S.W.2d 701, the trial court resolved questions of credibility in favor of Director. Each of those cases affirmed the trial court's judgment denying reinstatement.