Mark D. BRUSSEL, Petitioner/Appellant,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent.

No. 72238.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 24, 1998.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for respondent.

RHODES RUSSELL, Judge.

Mark Brussel ("driver"), appeals from the judgment of the trial court ordering the suspension of his driver's license following a trial *de novo*. Driver contends that the state failed to lay a proper foundation for admission of the results of his breathalyzer test. He also alleges that the trial court erred in adopting the commissioner's findings and recommendations in that the evidence did not support that the arrest took place on the date stated therein. We affirm the trial court's order, but remand for the court to correct the date of the offense.

Driver was arrested and charged with driving while intoxicated. The arresting officer administered a breath analysis test using an Intoxilyzer 5000. The test reflected that driver's blood alcohol content exceeded .10 percent, placing him in violation of section 302.505 RSMo 1994.[1]

Driver was notified by the Director of Revenue ("Director") that his driver's license was suspended pursuant to sections 302.520 through 302.540. Pursuant to section 302.530, an administrative hearing was held, and the decision to suspend driver's license was sustained. Driver petitioned the circuit court for a trial *de novo* pursuant to section 302.535.

The arresting officer testified that he observed driver for at least fifteen minutes prior to administering the test during which time driver did not smoke, vomit, or orally intake any material. The officer stated that he followed all the steps on the checklist, and that the Intoxilyzer 5000 appeared to function properly.

Officer Michael Feick also testified regarding the maintenance of the Intoxilyzer 5000. Feick stated that he held a Type II permit authorizing him to perform maintenance inspections. He testified that he performed a maintenance inspection on September 29, 1996. Feick stated that he followed the procedures outlined by the Department of Health ("Department"), and that the three

Victor C. Strauss, Jr., St. Louis, for petitioner/appellant.

1. All statutory references hereinafter are to RSMo 1994 unless otherwise indicated.

calibration tests were within the Department's specifications.

Regarding the simulator temperature, Feick testified that the maintenance report he filled out at the time of the maintenance inspection reflected a temperature of 35 degrees. However, he stated that when he wrote 35 degrees on the maintenance report it was a mistake as that temperature would be outside of the Department's specifications. Feick explained that the simulator thermometer displays 34 degrees in the center of the gauge with increments of .1 degrees plus or minus to either side. He testified that the test reading was plus .1, and he inadvertently wrote down "35 degrees" rather than the accurate reading of 34.1 degrees. Feick further testified that had the temperature reading not fallen within Department specifications, he would not have checked the box on the report form next to that reading. He stated that if the simulator had been outside proper operating temperature, he would not have completed the test, but would have immediately taken the instrument out of service.

The Director moved to admit the maintenance inspection report and the results of driver's breath test. Driver's objection as to lack of foundation was overruled. The case was taken under submission, and on February 10, 1997, the commissioner entered findings and recommendations denying the petition for trial *de novo* and sustaining the Director's order suspending driver's driving privileges. The commissioner's findings referred to the date of the incident as October 17, 1997. The trial court adopted the commissioner's findings and recommendations as the judgment of the court. Driver moved to amend the judgment, and the court denied the motion. This appeal followed.

In his first point on appeal, driver alleges that the trial court erred in adopting the commissioner's findings and recommendations because no proper foundation was established for admission of his breathalyzer test results. Specifically, driver argues that because the maintenance report reflected a simulator temperature outside Department specifications, the Director failed to lay a proper foundation for its admission. Driver maintains that without admission of the maintenance report, the breath test results were also not admissible.

■ In a driver's license suspension proceeding, the Director of Revenue is required to show, by a preponderance of the evidence, that (1) the arresting officer had probable cause to arrest the motorist for driving while intoxicated, and (2) at the time of arrest the motorist's blood alcohol content was .10% or greater. *Poage v. Director of Revenue,* 948 S.W.2d 194, 195–96 (Mo.App.1997). There is no dispute that the testimony of the arresting officer clearly established probable cause to effect the initial arrest.

■ In order to establish a prima facie foundation to admit evidence of a breathalyzer test, it must be demonstrated that the testing methods set out in section 577.020 were followed in that the test was performed (1) according to techniques and methods approved by the Department of Health, (2) by persons possessing a valid permit, and (3) using equipment and devices approved by the Department. *Rogers v. Director of Revenue,* 947 S.W.2d 475, 477 (Mo.App.1997). Department rules require that the breath testing machine undergo a maintenance check at intervals not to exceed 35 days. 19 C.S.R. 25–30.031(3). Adherence to the maintenance check requirement is mandatory. *Diehl v. Director of Revenue,* 836 S.W.2d 94, 96 (Mo. App.1992).

As the Western District explained in *Young v. Director of Revenue,* 835 S.W.2d 332, 334 (Mo.App.1992), driver's argument, that the maintenance report's inaccuracy deprives it of efficacy as a foundation for the breathalyzer test results, may have validity in the administrative phase of license suspension or revocation. At that stage, the state may acquit its burden to prove a prima facie case exclusively by the records and report of the chemical test in the file of the Department of Revenue. *Id.*

■ The prima facie proof of the essential elements in the judicial forum are not confined to the reports and records in the Department's file, as may be done at the administrative phase of license suspension, but include all available evidence, as at any

other trial. *Young,* 835 S.W.2d at 335. A court errs if it gives pre-eminence to the form *or content* of the verified report to the exclusion of testimony. *Leach v. Director of Revenue,* 705 S.W.2d 125, 127 (Mo.App.1986) (emphasis added).

■ The evidence left a question of fact as to whether the simulator's temperature was within Department's specifications. However, the fact that there was evidence that would support a different result, does not mandate our reversal. *Hawk v. Director of Revenue,* 943 S.W.2d 18, 21 (Mo.App.1997). Decisions as to the credibility of witnesses are for the trial court, and we must defer to its findings and conclusions. *Id.*

■ As the trier of fact, the court could believe the instrument was within the proper temperature range. Feick testified that he accidentally wrote down "35 degrees" even though the simulator was within specifications. He testified that the simulator thermometer actually showed a temperature of 34.1 degrees. Feick also testified that the maintenance test would not have been completed if the simulator had not been within the proper range of operating temperatures. Driver did cross-examine the officer using the report to impeach him, but the trial court apparently believed the officer's testimony that the machine was in proper operating range.

The trial court did not err in adopting the commissioner's findings and recommendations as to driver's blood alcohol content. Point one is denied.

■ Driver's second point asserts that the trial court erred in adopting the commissioner's findings and recommendations because the evidence did not support a finding that the incident occurred on the date referred to therein.

The judgment of the court states:

It is found:

(1) That on 10–17–97 the arresting officer had probable cause to arrest Petitioner for driving while intoxicated or an alcohol-related traffic offense; and,

(2) That Petitioner had a blood alcohol concentration of .10% or more by weight.

The findings were adopted by and became the judgment of the court on February 10, 1997, some eight months before the date referred to in the judgment.

Driver's assertion that this discrepancy requires reversal is erroneous. Any prejudice to driver can be cured by modification of the judgment to reflect the proper arrest date. We remand for the trial court to correct the date of the offense to assure that driver is subject to an accurate period of suspension. In all other respects, the judgment is affirmed.

CRANE, P.J., and JAMES R. DOWD, J., concur.