Dianna Lynn DUFFY, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. WD 54165.

Missouri Court of Appeals,
Western District.

April 7, 1998.

Michael W. Hanna, Raytown, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Laura M. Vogel, Asst. Atty. Gen., Jefferson City, for Respondent.

Before EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.

EDWIN H. SMITH, Judge.

Dianna Lynn Duffy appeals the circuit court's judgment upholding the administrative revocation of her driving privileges by the Director of Revenue (Director), pursuant to § 577.041.3 [1], for her refusal to submit to a second chemical test following her arrest for driving while intoxicated.

The appellant raises three points on appeal. She claims that the trial court erred in affirming the administrative revocation of her driving privileges in that: (1) it allowed the police officers to testify as to their observations of her behavior, the sobriety tests conducted by them and their results, and their opinion concerning her intoxicated condition, all of which was offered by the Director to establish reasonable grounds that she was driving while intoxicated as required by § 577.041.4(2), because their testimony was inadmissible in that the Director failed to lay a proper *Frye* foundation for the admission of their testimony; (2) it allowed one of the police officers to testify regarding the results of the appellant's horizontal gaze nystagmus (HGN) test, also offered to establish reasonable grounds that she was driving while intoxicated, because the HGN test result was inadmissible in that the Director failed to lay a proper foundation for its admission by showing that it was properly administered; and, (3) because there was no substantial evidence to support the decision of the trial court, it was against the weight of the evidence, and it erroneously declared and applied the law as to § 577.041.4, in that: (a) the police officer who conducted the second chemical test did not have reasonable grounds to believe she was driving while intoxicated; and, (b) her failure to take the second chemical test was not a "refusal" in that the required warning as to the consequences of a refusal, as required under the implied consent law, was inadequate.

We affirm.

### Facts

On June 21, 1996, Officer James Agnew of the Kansas City, Missouri, Police Department stopped the appellant's car because she had expired license plates. As he was waiting to notify the dispatcher of the stop, the appellant stepped out of her car and started to walk back to his vehicle. Officer Agnew told her to have a seat and that he would be with her in a few minutes. Approximately ten minutes later, the appellant again stepped out of her car and walked about six to eight feet away from it, swaying, then turned and looked at Officer Agnew. She was moving her arms, fidgeting, putting her hands around her hair and adjusting her hat, swaying, and swinging her arms. Officer Agnew again told her to return to her vehicle. He testified at trial that after he contacted his dispatcher, he requested the appellant to step out of her car and gave her an HGN test.

Officer Agnew testified that he had approximately 40 hours of training to determine whether an individual was under the influence of alcohol. In his four and one-half years as a police officer, he had arrested hundreds of individuals for alcohol-related traffic offenses. He had also come in contact with individuals who were under the influence of a controlled substance approximately 12 to 20 times. He testified regarding various observations which would lead him to believe that an individual was under the influence of a controlled substance, such as cocaine causes certain physical behaviors, some of which resemble a person under the influence of alcohol. If he believed an individual was under the influence of a drug, he would administer the field sobriety tests and, upon failure, he would place the individual under arrest and have him or her take a breathalyzer test. If the breathalyzer determined the individual was under the legal

1. All statutory references are to RSMo 1994, unless otherwise indicated.

limit for alcohol, he would call in a drug recognition expert or request a urine or blood sample.

Officer Agnew further testified that he was trained to perform the HGN test while in the police academy. He explained how the HGN test was administered by stating that when the subject's eyes bounce or jump, it means that the individual is under the influence of alcohol or some drug. He has conducted this test hundreds of times during his tenure as a police officer. He testified that there are three possible deviation points for each eye. He concluded that the appellant had failed the HGN test. However, he was not aware that an individual had to fail three or more of the six possible deviations before he or she failed the test.

Officer Agnew testified that during the one-leg stand test, the appellant swayed and used her arms for balance. He also smelled a faint odor of alcohol. He acknowledged that the appellant's pupils were normal, her speech coherent, and that he marked "okay" on the walk-and-turn test. At the time he saw appellant drive her car, her ability to operate a vehicle was not impaired. He testified that, based on the appellant's physical actions and failure of two field sobriety tests, he believed she was under the influence. After arresting the appellant, Officer Agnew contacted Officer Ralph Stewart from the unit to determine whether the appellant was, in fact, under the influence.

Officer Stewart had been a police officer for 21 years and held a Type II operator's, instructor's and trainer's permit from the Missouri Department of Health signifying extensive training of 140 hours on how to detect drivers under the influence, perform physical tests, field sobriety tests, and breathalyzer tests. He also held an instructor's permit on field sobriety training issued by the International Association of Chiefs of Police. Officer Stewart had special training to determine whether an individual is under the influence of a controlled substance consisting of a 24–hour introductory school and a 72–hour intensive school in drug recognition. He passed a comprehensive six-hour examination administered by the International Association of Chiefs of Police. In addition, he was a certified recognition expert for a total of 15 drug recognition exams, covering a minimum of five of the seven categories of controlled substances, including alcohol.

Officer Stewart requested the appellant to submit to a breathalyzer test under the implied consent law. He informed the appellant that she was under arrest and that to determine the alcohol content of her blood, he was requiring her to submit to a chemical test of her breath. He explained that if she refused to take the test, her driver's license would immediately be revoked for one year, that he would confiscate any valid license she had, and told her refusal to take the test or tests may be used against her in prosecution in a court of law. He further explained to her that he was asking her to take the test because she was stopped for having expired tags and that Officer Agnew noticed a faint odor of alcohol on her and believed she had failed to pass field sobriety tests. The results of appellant's breathalyzer test was .000. After restating the implied consent language, Officer Stewart requested the appellant take a urine test. The appellant did not take the urine test as requested.

During his observation of the appellant, Officer Stewart testified that her pupils appeared normal, but were fairly glassy. He administered another HGN test which the appellant passed. He also stated that the appellant's temperature was within normal limits, but her pulse and blood pressure were at the upper levels thereof. The appellant informed Officer Stewart that she had been in a car accident and broke her jaw which caused the bruxism she exhibited. Officer Stewart concluded that the appellant was under the influence of a controlled substance.

The appellant testified that she was informed that she needed to take only one test, the breathalyzer, which she did. She was under the impression that she did not need to take any additional tests. She further stated that she had not taken any drugs prior to operating her vehicle on the night in question. During cross-examination by the Director, the appellant admitted that she refused to take a urine test.

At the close of the evidence, the circuit court upheld the administrative revocation of the appellant's driving privileges, pursuant to § 577.041, following her arrest for driving while intoxicated.

This appeal follows.

## Standard of Review

Our review of a trial court's judgment upholding the decision of the administrative hearing officer to suspend or revoke an appellant's driving privileges, pursuant to § 577.041.3, is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Hawk v. Director of Revenue*, 943 S.W.2d 18, 19–20 (Mo.App.1997). We must affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

## I.

In Point I, the appellant claims that Officer Agnew's and Officer Stewart's testimony as to their field observations of her and her behavior, the sobriety tests conducted by them and their results, and their opinions concerning her intoxicated condition were inadmissible to satisfy the requirement of § 577.041.4(2) that the arresting officer had reasonable grounds to believe she was driving a motor vehicle in an intoxicated condition, because the Director failed to lay a *Frye*[2] foundation for the admission of their testimony in that the Director did not show that the tests conducted had gained general acceptance in the scientific community. The Director contends that the trial court did not err in permitting the officers' testimony because, to be admissible on the issue of reasonable grounds to believe the appellant was driving while intoxicated, as required in § 577.041.4(2), it was not necessary for the Director to lay a *Frye* foundation.

■ Because in reading the appellant's Point I we are not left with a clear understanding of what her precise claim is, we will first address whether she complied with Rule

84.04(d), dealing with Points Relied On (PRO), which provides, in pertinent part, that:

> [t]he points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. . . .

The rule, as written, requires three components for proper PRO: (1) a statement of the action or ruling complained of; (2) why the ruling was erroneous; and, (3) wherein the evidence or other matter supports the position the party asserts the trial court should have taken. *Jones v. Wolff*, 887 S.W.2d 806, 808 (Mo.App.1994) (citations omitted). An insufficient PRO, which cannot be understood without resorting to the record or the argument section of the brief, preserves nothing for appellate review. *Id.*

■ Here, the appellant failed to sufficiently state in her PRO the "why" and "wherein" components as required by Rule 84.04(d). Instead, she simply makes a general claim that the Director was required and failed to lay a *Frye* foundation for the admission of the officers' testimony as to their observations, tests conducted, and the test results. She fails to identify the specific tests she challenges, the foundation that is required for the admission of each, and in what respect each was lacking as to foundation. " 'It is not the duty of an appellate court to become an advocate for the appellant and search the record for error. . . .' " *Carr v. Grimes*, 852 S.W.2d 345, 351 (Mo.App.1993) (quoting *State ex rel. Missouri Hwy. and Transp. Comm'n v. Pipkin*, 818 S.W.2d 688, 690 (Mo.App.1991) (citations in *Pipkin* omitted)). Thus, we find that the appellant failed to preserve for appellate review the issue she attempts to raise in Point I. *Jones*, 887 S.W.2d at 808.

■ Even though the appellant failed to adequately preserve the issue she attempts to raise in Point I, we are cognizant of the fact that we may exercise our discretion pursuant to Rule 84.13 to review for plain error.

**2.** *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923) (where the court held that scientific evidence may be admitted only if it is sufficiently established that it has gained general acceptance in the relevant scientific community).

Exercising our discretion, we will limit our review of appellant's Point I for plain error. Plain error encompasses only prejudicial error which so substantially affects the rights of the party that manifest injustice or a miscarriage of justice inexorably results if left uncorrected. *State v. Isa,* 850 S.W.2d 876, 884 (Mo. banc 1993).

■ After a careful reading of appellant's Point I and the argument thereon, the only apparent claim we can glean therefrom is that, as to any scientific evidence which the Director introduced on the issue of establishing reasonable grounds to believe she was driving while intoxicated, the Director was required to lay a *Frye* foundation and failed to do so. This is the same issue which was presented to the Eastern District of this court in *Nuyt v. Director of Revenue, State of Mo.,* 814 S.W.2d 690 (Mo.App.1991).

In *Nuyt,* the appellant was contending that it was error for the trial court to affirm the revocation of his driving privileges, pursuant to § 577.041, because the Director failed to lay a *Frye* foundation for the admission of testimony as to the field sobriety tests given, including the alphabet test, the heel-to-toe test, the balance swing test and the finger-to-nose test. In affirming the administrative revocation of the appellant's driving privileges, the court held that where scientific proof of sobriety is offered to establish reasonable grounds that an individual was driving while intoxicated sufficient to revoke an individual's driving privileges as required in § 577.041.4(2), it is not necessary to lay a *Frye* foundation. *Nuyt,* 814 S.W.2d at 691–92 (*see Tuggle v. Director of Revenue,* 727 S.W.2d 168, 169 (Mo.App.1987); *Kranz v. Director of Revenue,* 764 S.W.2d 508 (Mo. App.1989)).

This court addressed this same issue in *Eggleston v. Lohman,* 954 S.W.2d 696 (Mo. App.1997), and reached the same conclusion as the court did in *Nuyt.* Thus, the appellant's claim here, that the admission of scientific evidence to establish reasonable grounds that she was driving while intoxicated as required by § 577.041.4(2) was error because the Director failed to lay a *Frye* foundation, is without merit.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in allowing Officer Agnew to testify regarding the result of her HGN test because it was inadmissible in that the test was not properly administered and the result was inconsistent with the conclusion that the appellant had failed it. We agree with the appellant that the HGN test result was inadmissible in that the test was not properly administered.

In determining whether to sustain an administrative revocation pursuant to § 577.041.3 based on the refusal to take a chemical test, the circuit court must determine:

(1) Whether or not the person was arrested;

(2) Whether or not the arresting officer had reasonable grounds to believe that person was driving a motor vehicle while in an intoxicated condition; and

(3) Whether or not the person refused to submit to the test.

§ 577.041.4; *see also Hawk,* 943 S.W.2d at 20. If the court determines any of the three issues not to be in the affirmative, it shall order the Director to reinstate the license or permit to drive. § 577.041.5.

■ In this point, the issue is what is required to lay a proper foundation to admit the result of the HGN test as evidence to establish whether the arresting officer had reasonable grounds to believe the appellant was "driving a motor vehicle while in an intoxicated condition," the second determination required by § 577.041.4. The appellant contends that a proper foundation includes the fact that the officer could properly score the test and interpret its result. On the other hand, the Director contends that as long as the officer properly conducted the actual mechanics of giving the test, he should be allowed to testify as to whether he believed the individual failed the test in determining whether he had reasonable grounds to believe the individual was driving while intoxicated.

In *State v. Hill,* 865 S.W.2d 702, 704 (Mo. App.1993), *overruled on other grounds by State v. Carson,* 941 S.W.2d 518 (Mo. banc 1997), this court held "that when properly administered by adequately trained personnel, the HGN test is admissible as evidence of intoxication." As the Director points out in her brief, *Hill* did not address the issue of the admissibility of the HGN test result to support the arresting officer's determination of reasonable grounds to believe an individual was driving while intoxicated in an administrative revocation case, but only addressed whether it was admissible to prove intoxication in a criminal prosecution. However, *Hill* did address what was required to properly administer the test. In that respect, this court held that:

> [p]roper administration of the HGN test requires (1) that the test be conducted by requiring a suspect to follow an object such as a finger, pencil or pen with his eyes as the object is moved laterally along a horizontal plane to the periphery of the suspect's vision, and (2) *that the indicators be interpreted and scored, one eye at a time, as follows:* (a) the person administering the test is to observe how smoothly a suspect follows the object as it is moved to the periphery of the suspect's vision. Jerking of the eyes rather than the ability to follow the object smoothly indicates the influence of alcohol; (b) the person administering the test is to observe whether or not a distinctive jerking occurs in the eyes at the maximum point of deviation when the eye moves to the far periphery of vision. Distinctive jerking is indicative of the influence of alcohol; and (c) the person administering the test is to observe the angle at which nystagmus occurs. Nystagmus occurring at or before the eye is looking at a 45-degree angle is indicative of the influence of alcohol.
>
> One point is scored for eye movement indicative of alcohol influence for each of the three tests for each eye. The highest possible score is six points, with a score of four or more points constituting substantial evidence that a suspect is intoxicated.

*Id.*(emphasis added). Thus, this court required in *Hill* that the proper administration

of the HGN test includes the officer's ability to properly score and interpret the result.

From the record, it is clear that although the police officer who conducted the test was aware of the proper procedure to conduct the test and complied with that procedure, it is equally clear that he was not aware of how to properly score it and to interpret the result. We glean this from the *voir dire* examination of Officer Agnew by the appellant's counsel pursuant to his objection to the officer's testimony concerning the test results, which was as follows:

Q: Officer Agnew, when you performed this test—or when you performed the gaze test, how—is there a certain number of tests for each eye that you perform?

A: No.

Q: Are there—Are there a certain number of—What's the criteria, then, that you use for determining whether or not the person has failed the gaze test?

A: If their eyes jerk or bounce at the maximum deviation point or—

Q: Well, isn't there three possible deviation points for each eye?

A: Yes.

Q: And isn't it true that you have to fail—you have to fail three or more of the six possible deviations before you fail the gaze test?

A: I'm not aware of that.

From this testimony, it is apparent that Officer Agnew based his determination that the appellant failed the test solely on his observation that "[s]he had distinct nystagmus at maximum deviation." This is contrary to the holding in *Hill,* where this court required a "score of four or more points [as] indication that a suspect is intoxicated." *Hill,* 865 S.W.2d at 704. However, the Director argues that since Officer Agnew conducted the "mechanics" of the test correctly, his lack of exact knowledge as to how to correctly score the test, as required by *Hill* for its proper administration, was somehow irrelevant. We find this argument to be without merit.

Logically, in order to make a § 577.041.4(2) determination as to whether there were reasonable grounds or was probable cause, *see Nuyt,* 814 S.W.2d at 691

(holding that reasonable grounds and probable cause are essentially the same in the context of § 577.041.4(2)), to believe an individual was driving while intoxicated based on an HGN test, the officer must be able to interpret the test result correctly. This is so in that " 'probable cause refers to the quality and quantity of proof tending to establish a certain thing.' " *Id.* (quoting *Tuggle,* 727 S.W.2d at 170). The "thing" in this case is the appellant's intoxication. Obviously, a scientific test as to intoxication, which is improperly administered in that the person administering it is not able to properly interpret the result for intoxication, does not tend to prove intoxication under a probable cause or reasonable doubt standard.

As stated, *supra,* Officer Agnew was not aware of the standard scoring system for the HGN test as required in *Hill* for its proper administration. *Nuyt,* 814 S.W.2d at 691. As such, the test was not properly administered and the trial court erred in allowing the admission of its result on the issue of probable cause that the appellant was driving while intoxicated. However, this does not end our inquiry. Merely because the trial court erred in this respect does not entitle the appellant to the appellate relief she requests. She must also show that the error was prejudicial. *Lewis v. Wahl,* 842 S.W.2d 82, 84–85 (Mo. banc 1992). An error is prejudicial requiring reversal if it materially affects the merits of the action. *Id.;* Rule 84.13. We cannot make this determination without determining whether there was sufficient evidence, without the admission of the HGN test result, to establish probable cause that the appellant was driving while intoxicated. And, because this determination is inextricably intertwined with the issues raised in appellant's Point III, we will address it in determining whether the erroneous admission of the HGN test result prejudiced her and constituted reversible error.

## III.

In Point III, the appellant claims in two subpoints that the trial court erred in affirming the administrative revocation of her driving privileges, pursuant to § 577.041.3, because: (a) as to the second determination required to be made by the trial court, pursuant to § 577.041.4(2), that the officer must have reasonable grounds to believe the appellant was driving a motor vehicle while intoxicated, there was no substantial evidence to support the ruling, and it was against the weight of the evidence; and, (b) as to the third determination required to be made by the trial court, pursuant to § 577.041.4(3), that the appellant must have refused to submit to a chemical test, it misapplied the law. We will address these two determinations separately.

### A.  Reasonable Grounds to Establish Driving While Intoxicated

■ "In assessing if there is substantial evidence, we must defer to the trial court on factual issues and cannot substitute our judgment for that of the trial judge." *Hawk,* 943 S.W.2d at 20 (citing *Thurmond v. Director of Revenue,* 759 S.W.2d 898, 899 (Mo.App. 1988)). Such deference is applicable to the issue of a witness' credibility and also to the conclusions of the trial court. *Hawk,* 943 S.W.2d at 20 (citing *Kitchens v. Missouri Pacific Railroad Co.,* 737 S.W.2d 219, 222 (Mo.App.1987)).

■ "Appellate courts view the evidence in the light most favorable to the trial court's judgment and we deem all facts to have been found in accordance with the result reached by the trial court. A trial court is accorded wide discretion even if there is evidence that would support a different result. In a driver's license revocation case, a trial court has the prerogative when weighing witness credibility, to accept or reject all, part, or none of the testimony of any witness." *Hawk,* 943 S.W.2d at 20 (citations omitted).

■ An appellate court will set aside a judgment on the basis that it is against the weight of the evidence "only when this court has a firm belief that the judgment is wrong." *Waddell v. Director of Revenue,* 856 S.W.2d 94, 95 (Mo.App.1993). The power to set aside a judgment on the basis that it is against the weight of the evidence should be exercised " 'with caution and with a firm belief that the decree or judgment is against the weight of the evidence and with a firm belief that the decree or judgment is against

the weight of the evidence and is wrong.'" *Hatfield v. Director of Revenue*, 907 S.W.2d 207, 208 (Mo.App.1995) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "'Weight of the evidence' means its weight in probative value, not the quantity or amount of evidence. The weight of the evidence is not determined by mathematics, but on its effect in inducing belief." *Waddell*, 856 S.W.2d at 95 (citations omitted).

In order to administratively revoke an individual's driving privileges, pursuant to § 577.041.3, the Director has the burden to establish probable cause that the individual was driving while intoxicated. *Matthews v. Director of Revenue*, 938 S.W.2d 279, 281 (Mo.App.1997) (citation omitted). As discussed, *supra*, in Point I, probable cause exists when the facts and circumstances would lead a prudent, cautious, and trained police officer at the scene to believe an offense has been committed. In examining the existence of probable cause, courts are to consider the information possessed by the officer before the arrest and the reasonable inferences drawn therefrom. *Eggleston*, 954 S.W.2d at 696; *Matthews*, 938 S.W.2d at 281.

Probable cause has been found where the driver had slurred speech, dilated pupils, bloodshot eyes, a moderate smell of an intoxicating beverage on his breath, a sway to his walk, and completed field sobriety tests to varying degrees of success. *Rogers v. Director of Revenue*, 947 S.W.2d 475, 477 (Mo. App.1997). Probable cause has also been found where the driver's eyes were bloodshot and watery, his speech was slurred, and he had a strong odor of alcohol on his breath. *Id.* (citing *Diehl v. Director of Revenue*, 836 S.W.2d 94, 95 (Mo.App.1992)).

Here, even excluding the result of the HGN test as being inadmissible, as was determined in Point II, *supra*, we find the evidence presented was sufficient to support a finding that the appellant was driving while intoxicated. Officer Agnew testified that the appellant swayed when she walked and had a faint odor of alcohol. He also testified that when he conducted the one-leg stand field sobriety test, she swayed and used her arms for balance. This evidence was sufficient to support a finding that the officer had reasonable grounds to believe that the appellant was driving a motor vehicle while in an intoxicated condition.

The appellant contends that, along with the other evidence, the breathalyzer result showing no alcohol in her system must be factored into the officer's probable cause determination. She argues that given the results of the breathalyzer, the officer could not make a probable cause determination of driving while intoxicated. However, even in light of the fact that the breathalyzer result demonstrated that the appellant was not under the influence of alcohol and the officer was aware of that fact, this did not preclude a probable cause determination that she was driving while under the influence of drugs. For purposes of driving while intoxicated in the context of § 577.041, an intoxicated condition includes "the influence of alcohol, a controlled substance, or drug, or any combination thereof." § 577.001.2. Thus, the fact that the officer in the instant case knew, in making his probable cause determination that the appellant was "driving while intoxicated," that she was not under the influence of alcohol would not mandate a lack of a § 577.041.4(2) probable cause determination where there was sufficient evidence to find that she was under the influence of drugs, rather than alcohol. In fact, here, given what the officer believed to be peculiar behavior consistent with being under the influence of alcohol or drugs and the lack of evidence that the appellant was under the influence of alcohol, it was reasonable for the officer to conclude that she must have been under the influence of drugs, which precipitated the request for a second test, a fact to which he testified.

The appellant also states in her brief that the court misapplied the law in determining probable cause in affirming the revocation of the appellant's driving privileges. However, she fails to tell us how the court misapplied the law in this respect. Thus, we refuse to review her claim on this basis.

### B. Refusal to Submit to a Second Chemical Test

The appellant next claims that the trial court misapplied the law in finding that

she "refused" to submit to a chemical test, under § 577.041.4(3), as required for an administrative revocation. The appellant contends that, in order for there to be a refusal to take a chemical test sufficient to revoke one's driving privileges pursuant to § 577.041.3, there must be an adequate warning of the consequences for refusing to take the test. In this respect, the appellant argues that she was not properly warned because the officers failed to advise her that under the implied consent law she could only be required to take two tests. We disagree.

The implied consent law is found in § 577.020, which provides, in pertinent part:

1. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of the sections 577.020 to 577.041, a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition. The test shall be administered at the direction of the arresting law enforcement officer whenever the person has been arrested for the offense.

2. The implied consent to submit to the chemical tests listed in subsection 1 of this section shall be limited to not more than two such tests arising from the same arrest, incident or charge.

Section 577.041.1 requires that the arresting officer's request to submit to any test allowed "shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and that his license shall be immediately revoked upon his refusal to take the test." As to this warning, the Supreme Court of Missouri recently held that

[t]he purpose of the warning ... is to inform an apparently inebriated driver of the consequences that follow a refusal to consent to a chemical test to determine [the level of intoxication]. Ignoring the internal inconsistency of a system that demands that inebriated persons be given information from which to render an informed decision, the statute demands that a law enforcement officer provide an arrestee with information upon which the arrestee may make a voluntary, intentional and informed decision as to whether or not to submit to the chemical test. If the purpose of the warning is to provide information, a warning is sufficient for purposes of due process unless the words used either (1) fail to inform the arrestee of all of the consequences of refusal or (2) mislead the arrestee into believing that the consequences of refusal are different than the law actually provides.

*Teson v. Director of Revenue,* 937 S.W.2d 195, 197 (Mo. banc 1996).

Here, the appellant does not dispute the fact that she was given a warning before the officer's request to take each test, that if she failed to take the test, she would lose her driving privileges. Instead, what she contends is that she received an inadequate warning in that she should have been, but was not, advised that she could be required to take only two chemical tests and that her refusal to take the second test was a result of this lack of information. In other words, she claims that had she known that only two tests could be required, she would not have refused the second test; and, therefore, due to an inadequate warning there could be no finding of a refusal.[3] The appellant is correct that an inadequate warning as to the consequences of failing to submit to a chemical test prevents the finding of a refusal sufficient to support an administrative revocation of an individual's driving privileges pursuant to § 577.041.3. *Id.* at 197–98. However, we disagree that she received an inadequate warning as she contends.

The appellant wants this court to engraft onto the statutory requirements for a sufficient warning to constitute a valid re-

---

**3.** It is not lost upon this court that it can be inferred from the fact that the appellant agreed to submit to the breathalyzer test, but refused to take the urine test, that this was because she knew she was not under the influence of alcohol, but feared she was under the influence of drugs.

quest under the implied consent law an additional requirement that an individual should be informed that he or she can be required to take only two chemical tests. We refuse to do so. The appellant fails to articulate, other than her conclusion that the warning should include the information that an individual may only be required to take two tests, why this information is necessary to constitute a valid warning. Given the purpose of the warning, stated, *supra*, we see no merit to the claim that an additional warning that only two tests may be requested should be required. It is well settled that a request to submit to a chemical test must only be accompanied by a warning that the driver's operator's license shall be immediately revoked upon refusal to take the test, which was done here. § 577.041.1. Further,

'[a] driver who is advised of [her] rights under the implied consent law but declines to take a [chemical] test is deemed to have "refused" the test so as to require revocation of his license unless [s]he *objectively and unequivocally* manifested that [s]he did not understand [her] rights and the warning concerning the consequences of refusal and was denied clarification. *A lack of understanding not made apparent to the officer is of no consequence.*'

*Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975) (emphasis supplied) (quoting *State of Washington, Dept. of Motor Vehicles v. Riba*, 10 Wash.App. 857, 520 P.2d 942, 945 (1974)). The appellant did not manifest a lack of understanding to the officer as to her rights and the warning concerning the consequences of a refusal. Inasmuch as the appellant was advised of her rights; received an adequate warning as to the consequences of a refusal; and, declined to take the second requested chemical test, we find that this constituted a "refusal" under the implied consent law sufficient to administratively revoke her driving privileges pursuant to § 577.041.3.

Point denied.

Having found in this point that the evidence was sufficient, without considering the HGN test result, to establish probable cause that the appellant was driving while intoxicated, we find the appellant was not preju-diced by the erroneous admission of the HGN test result as discussed in Point II, *supra*.

### Conclusion

We affirm the judgment of the circuit court upholding the revocation of appellant's driving privileges, pursuant to § 577.041.3.

All concur.