Timothy James WITHERWAX,
Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 64006.

Missouri Court of Appeals,
Western District.

April 19, 2005.

Cheryl Ayn Caponegro Nield, Jefferson City, MO, for appellant.

Joseph Francis O'Hara, Independence, MO, for respondent.

Before SPINDEN, P.J., HOWARD and NEWTON, JJ.

VICTOR C. HOWARD, Judge.

Director of Revenue ("the Director") appeals from a judgment in the Circuit Court of Clay County reinstating Respondent Timothy Witherwax's ("Witherwax") driving privileges that were revoked pursuant

to section 577.041[1] for failing to submit to a breathalyzer test. In her sole point on appeal, the Director argues the trial court erred in reinstating Witherwax's driving privileges, because the trial court's judgment is against the weight of the evidence and unsupported by substantial evidence in that the officer had reasonable grounds to believe Witherwax was driving while intoxicated. For the reasons explained below, we affirm the judgment of the trial court.

## Background

The Director revoked Witherwax's driver's license for one year on July 11, 2003, for refusal to submit to a chemical test. On July 23, 2003, Witherwax filed a petition to review the revocation in the Circuit Court of Jackson County. After Witherwax's motion to change venue was sustained, the case was tried before the Circuit Court of Clay County in a bench trial on February 23, 2004.

Section 577.041.4 provides, in relevant part, that the trial court:

[S]hall determine only:

(1) Whether or not the person was arrested or stopped;

(2) Whether or not the arresting officer had:

(a) reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; . . . and

(3) Whether or not the person refused to submit to the test.

Only the second determination regarding reasonable grounds is at issue in this appeal.

■ "This court reviews the evidence supporting the circuit court's judgment, as well as all reasonable inferences drawn from such evidence, as true." *Kimber v. Dir. of Revenue*, 817 S.W.2d 627, 630 (Mo. App. W.D.1991). "Any evidence or inferences that are contrary to the circuit court's judgment are disregarded." *Id.* With this standard as our guide, we review the evidence.

On June 11, 2003, at approximately 11:30 p.m., Kansas City policeman Christopher Toigo ("Toigo") was driving southbound on North Oak Trafficway when he observed a gray Honda Accord stopped on the right-hand shoulder.[2] There was a female leaning through the passenger window, and Toigo observed the driver and the female arguing. Toigo activated the red lights of his police cruiser and went to check the Honda Accord. Toigo believed a disturbance had occurred because the female was crying and appeared emotional and upset, and Witherwax confirmed that a verbal argument had occurred.

When Toigo approached the car, the female started walking southbound on North Oak Trafficway. Toigo asked the female to come back, but she refused, so Toigo sent another police car to detain her. Toigo then contacted the driver who identified himself to be Timothy Witherwax. Witherwax's eyes were glassy and watery, and he acted confused about why he had been stopped. Toigo thought Witherwax appeared upset and could have been crying. Toigo could also smell a strong odor of alcohol on Witherwax's person. There was no evidence that the odor was coming from his breath, and Witherwax apparently was never asked if he had been drinking.

---

1. All statutory references are to Revised Statutes of Missouri, 2000.

2. Toigo had not observed any erratic driving by Witherwax, and Witherwax did not receive any traffic tickets for erratic or improper driving that night.

When Toigo ran Witherwax's driver's license through the police dispatch, it indicated Witherwax had three outstanding warrants for parking violations in Kansas City. Witherwax was placed under arrest for the warrants and was transported back to the North Patrol Division. Toigo administered three field sobriety tests: (1) the gaze nystagmus, (2) the one-leg stand, and (3) the walk and turn. The gaze test was done at the scene, and the other two tests were done at the station.

Toigo indicated in his report that Witherwax failed the gaze nystagmus test. Though unrelated to the test, Toigo did note that Witherwax's pupils were "normal."

For the one-leg stand test, Witherwax was instructed to stand on one leg by lifting his foot off the ground until being told to put it down. Witherwax was able to stand on his leg for approximately 24 or 25 counts without using his arms to balance. During the one-leg stand test, Witherwax felt pain in his leg. Witherwax had had eight knee surgeries prior to June 11, 2003, and he explained this to Toigo. Witherwax asked Toigo when he could put his foot down. Toigo told Witherwax to wait until he was told. It is not clear how long Toigo intended for Witherwax to remain on one leg; but when Witherwax put his foot down before being told, Toigo determined that the one-leg stand test was over.

The walk and turn test consists of nine heel-to-toe steps down a straight line, followed by several small steps to turn around, and continuing with nine more heel-to-toe steps. Officer Toigo's report indicated Witherwax successfully completed the test. Witherwax was able to balance while listening to instructions, he did not stop to balance himself, and Toigo agreed he was able to touch heel-to-toe "perfectly." Witherwax also kept his balance while walking, did not use his arms to stay balanced, and did not walk too far or too short. The walk and turn test is composed of eight separate physical criteria. Toigo agreed that Witherwax passed "100 percent" of the physical criteria in the walk and turn test. Witherwax denied Toigo's claim that he started the test before receiving complete instructions. Toigo also noted that Witherwax's pupils were in normal condition, his clothing was neat, and he used no profanity. Witherwax fully cooperated with Toigo.

After completing the walk and turn test and the one-leg stand test, Witherwax believed he had satisfactorily completed the tests. Toigo denied that Witherwax's performance on the walk and turn test was inconsistent with Toigo's observations that Witherwax was wobbling and stumbling when he got out of the car. Witherwax denied that he was wobbling, had sagging knees, or was stumbling. Toigo did not know how much Witherwax drank, what Witherwax had drunk, or when he had his last drink before his arrest. Toigo did not observe any open containers in the car, and he did not arrest Witherwax on the scene for drunk driving. Officer Toigo said the only reason for arresting Witherwax on the scene was parking ticket warrants.

After the field tests, Toigo asked Witherwax to take a breathalyzer test. Witherwax did not believe he was under the influence of alcohol at the time, and he did not believe there was any rational reason to take a breathalyzer test. After Toigo requested that Witherwax take a breathalyzer test, Witherwax requested an attorney. When an attorney could not be reached, Witherwax attempted to contact a bondsman. When Witherwax could not reach an attorney or a bondsman within twenty minutes, he was asked again to take a breathalyzer test. Witherwax re-

fused to take a breathalyzer test because when he was initially arrested, there was no mention of his driving while intoxicated. Witherwax was not aware that a breathalyzer test is the best method for determining whether a person is under the influence of alcohol.

At the close of the bench trial, the trial judge stated: "I do think the [Director's] evidence here for the purpose of the test is somewhat thin." On February 26, 2004, the trial court entered a judgment sustaining Witherwax's petition for reinstatement and setting aside the revocation of Witherwax's driver's license. This appeal follows.

## Discussion

■ In her sole point on appeal, the Director argues the trial court erred in reinstating Witherwax's driving privileges, because the trial court's judgment is against the weight of the evidence and unsupported by substantial evidence, in that the officer had reasonable grounds to believe Witherwax was driving while intoxicated.

■ Appeals to the circuit court for suspension of a driver's license are *de novo*. § 302.311. "A trial court's judgment in a driver's license suspension or revocation case must be affirmed on review, unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Soval v. Dir. of Revenue*, 2 S.W.3d 854, 856 (Mo.App. W.D.1999). "A trial court is accorded wide discretion even if there is evidence that would support a different result." *Hawk v. Dir. of Revenue*, 943 S.W.2d 18, 20 (Mo.App. S.D.1997). "In a driver's license revocation case, a trial court has the prerogative when weighing witness credibility, to accept or reject all, part, or none of the testimony of any witness." *Id.*

The record reflects that much of the evidence is conflicting and disputed. For example, Witherwax denies he stumbled or wobbled when he got out of the car but, instead, says that he walked perfectly fine. This is supported by the fact that, according to Toigo, Witherwax executed the eight physical components of the walk and turn test perfectly. This is contradictory to someone who is stumbling or unable to follow instructions. Witherwax also was able to stand for 24 or 25 counts on one leg without using his arms for balance.

There is evidence that the officer detected the odor of alcohol on Witherwax's "person" while he was sitting in his car. This may be mere semantics, but Toigo did not testify that Witherwax specifically had the odor of alcohol on his breath. Toigo noted Witherwax's eyes were watery but also acknowledged he could have been crying. Also, there was no evidence of erratic driving, an admission of alcohol consumption, empty or open containers, or slurred speech. Witherwax's pupils were normal, and his appearance was neat.

We must defer to the trial court on factual issues because it is in the unique position to observe the witnesses, judge credibility, and resolve any conflicts in the evidence. We find the trial court did not err in its judgment setting aside the Director's revocation of Witherwax's driver's license.

Point is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

SPINDEN, P.J., and NEWTON, J., concur.