**Curtis E. KRTEK, Petitioner–Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent–Appellant.**

**No. 21884.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 31, 1998.

Motion for Rehearing or Transfer Denied
Aug. 24, 1998.

---

**5.** *State v. Johnson* has been overruled on other grounds. *State v. O'Brien,* 857 S.W.2d 212, 221

n. 3 (Mo. banc 1993).

Jeremiah W. (Jay) Nixon, Atty. Gen., Craig F. Martin, Asst. Atty. Gen., Jefferson City, for appellant.

Ralph W. Gilchrist, Bolivar, for respondent.

BARNEY, Judge.

The Director of Revenue (Director) appeals from the circuit court's judgment which reinstated the driving privileges of Curtis E. Krtek (Curtis). The Department of Revenue suspended Curtis' driving privileges pursuant to section 302.505 after he was arrested for driving while intoxicated.[1] The Department of Revenue upheld the suspension following an administrative hearing. *See* § 302.530. Curtis sought a trial *de novo* pursuant to section 302.535 in the Polk County Circuit Court.[2] Following the trial, the circuit court ordered the Director to remove the suspension from Curtis' driving record and to reinstate his driving privileges. We affirm.

The judgment of the trial court will be affirmed by this Court unless there is no substantial evidence to support it, it is against the manifest weight of the evidence, or unless it erroneously declares or applies the law. *Green v. Director of Revenue*, 961 S.W.2d 936, 938 (Mo.App.1998).

On January 1, 1997, at approximately 1:12 a.m., City of Bolivar Police Officer Scott Boyd observed Curtis operating a 1991 Chevrolet truck in Bolivar, Polk County, Missouri. Officer Boyd observed Curtis make an unusually wide turn onto Albany Street and almost strike the curb on the opposite side of the street. After Curtis "jerked" his vehicle into the correct lane of travel, Officer Boyd activated the emergency lights on his patrol car, whereupon Curtis stopped his vehicle.

---

1. All statutory references are to RSMo Cum. Supp.1996.

2. "Any person aggrieved by a decision of the department may file a petition for trial de novo by the circuit court." § 302.535.1.

Officer Boyd approached the vehicle and noted a strong odor of an intoxicant emanating from Curtis and that his eyes were bloodshot and glassy and that his speech was slurred. When asked whether he had been consuming alcohol, Curtis responded "just a few."

Officer Boyd instructed Curtis to perform several field sobriety tests. Curtis failed to satisfactorily perform all of them, except for the "one-legged stand."

Convinced that he had probable cause to arrest Curtis for driving while intoxicated, Officer Boyd informed Curtis of his *Miranda* rights and transported him to the Polk County Sheriff's Office. While at the sheriff's office, a breath analyzer test was administered to Curtis by City of Bolivar Police Officer Sam Brothers. Officer Brothers is a qualified Type III breath analysis operator. He is authorized to administer the BAC Verifier test and the BAC Data Master test. Officer Brothers administered the BAC Data Master test to Curtis.

Officer Brothers testified that he read the "Implied Consent Law"[3] to Curtis at 1:31 a.m. Curtis expressly consented to the administration of the breath analyzer test. The first test was administered to Curtis at 1:44 a.m. However, the first test was aborted because it detected the presence of "mouth alcohol." It appears from the "Evidence Ticket" printout contained in the Legal File that a second breath analyzer test was administered to Curtis by Officer Brothers at 1:50 a.m. Officer Brothers testified that Curtis registered a .16 blood alcohol content the second time the test was administered. Curtis' driving privileges were thus suspended.

The administrative hearing was held by the Missouri Department of Revenue on February 21, 1997. On February 25, 1997, the Missouri Department of Revenue issued its findings of fact and conclusions law, sustaining the suspension of Curtis' driving privileges. In his petition for trial *de novo*,

Curtis maintained that there was no evidence of a "timely or valid chemical test ... performed pursuant to law in such cases ..." and the "[b]lood test was not timely according to statutes and the results thereof were invalid and void."

On August 4, 1997, the circuit court entered its judgment which set aside the decision of the Department of Revenue and reinstated Curtis' driving privileges.

The trial court did not issue any findings of fact or conclusions of law in support of its judgment. "Because no findings of fact were asked for or made, we consider all fact issues as having been found in accordance with the result." *Edwards v. Director of Revenue,* 769 S.W.2d 483, 484 (Mo.App.1989); *Scott v. Director of Revenue,* 755 S.W.2d 751, 752 (Mo.App.1988); *see also* Rule 73.01(a)(3), Missouri Court Rules (1998).

On appeal to this Court, the Director maintains in its sole assignment of error that the trial court erred in setting aside the suspension of Curtis' driving privileges because the *second* breath analyzer test administered to Curtis was valid in that the Department of Health's regulations on breath analyzer tests do not require the administering officer to observe an additional 15–minute waiting period before administering a second test if the first test detects the presence of mouth alcohol.[4]

We note that Missouri Department of Health regulation 19 CSR 30.060, Form # 7, which the Director introduced and which was admitted in evidence in this case, mandates that the suspect be "observed for at least 15 minutes" immediately preceding the administration of a breath analyzer test and that there be "no smoking or oral intake of any material during this time; if vomiting occurs, start over with the 15 minute observation period." *See Green,* 961 S.W.2d at 939.

The Director extrapolates from the trial court's judgment, which contains no findings of fact or conclusions of law, that the trial

---

**3.** *See* § 577.020; *Peeler v. Director of Revenue,* 934 S.W.2d 329, 330 (Mo.App.1996) (a motorist by applying for and accepting an operator's license "impliedly consents" to submission to a chemical analysis of his blood alcohol level when charged with driving while intoxicated).

**4.** Recall that the second breath analyzer test was administered to Curtis six minutes after the first test was administered and aborted because of the detection of "mouth alcohol."

court based its judgment on the theory that the regulations relative to breath analyzer tests required Officer Brothers to have observed Curtis for a *second* 15–minute observation period before administering the second test after the first test detected "mouth alcohol." *See* 19 CSR 25–30.060. The Director asserts that the regulations do not require such a procedure.[5] While the trial court may have indeed reached its judgment as the Director asserts, we need not resolve that issue. We discern from the record that there is substantial evidence to support a finding that the trial court based its decision on the theory that neither Officer Brothers nor anyone else observed Curtis for an initial 15–minute observation period prior to administering either test. "[W]e consider all fact issues as having been found in accordance with the result" reached by the trial court when no findings of fact or conclusions of law are requested or entered. *See Edwards,* 769 S.W.2d at 484.

Officer Brothers testified that he was not the arresting officer. Officer Brothers met Curtis at the police station for the purpose of administering a breath analyzer test. He read the Implied Consent Law to Curtis at 1:31 a.m. When asked how much time elapsed between meeting Curtis and reading the Implied Consent Law, Officer Brothers responded "I don't recall the time lapse there."

Officer Brothers testified that he administered the first breath analyzer test to Curtis at 1:44 a.m. That was 13 minutes after Officer Brothers read the Implied Consent Law to Curtis. There was no testimony, however, to indicate that either Officer Brothers or anyone else observed Curtis during the interval between the reading of the Implied Consent Law to Curtis and the administration of the breath analyzer test. Also, on re-direct examination, Officer Brothers was asked,

"How long did you observe him before you read the Implied Consent?" Officer Brothers responded, "I don't recall the time."

We acknowledge that in the Alcohol Influence Report, contained in the Legal File and prepared by Officer Brothers, he indicated on the checklist for the Data Master breath analyzer test that, "Subject observed for at least 15 minutes by Sam Brothers." Officer Brothers did not allude to this entry in his testimony.

■ In determining whether there is substantial evidence supporting the judgment of the trial court we defer to the ability of the trial court to ascertain the facts. *Thurmond v. Director of Revenue,* 759 S.W.2d 898, 899 (Mo.App.1988). "The trial court is accorded wide discretion even if there is evidence in the record which would support a different result." *Id.; see also Edwards,* 769 S.W.2d at 484. Further, conflicts in evidence are for the trial court to resolve. *Cook v. Director of Revenue,* 890 S.W.2d 738, 740 (Mo.App.1995). This Court must also give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Chapman v. McNeil,* 740 S.W.2d 701, 702 (Mo.App.1987).

■ "Section 577.037.4 . . . requires the [D]irector to establish that the breath test was performed in accordance with methods and standards approved by the state department of health." *McKown v. Director of Revenue,* 908 S.W.2d 178, 179 (Mo.App.1995). The record in this matter discloses that the Department of Revenue failed to establish that the City of Bolivar Police Department complied with 19 CSR 25–30.060, promulgated by the Missouri Department of Health.[6] *See Green,* 961 S.W.2d at 939. The record supports a reasonable inference that Curtis was not observed by Officer Brothers or any other law enforcement personnel for an ini-

---

5. This issue has not been addressed by a Missouri appellate court. However, the Director's interpretation of the policies and procedures relative to the 15–minute observation period has been addressed and generally accepted by courts in Alaska and Texas. *See Williams v. State,* 884 P.2d 167, 174 (Alaska App.1994); *State v. Moya,* 877 S.W.2d 504, 505–06 (Tex.App.1994).

6. In the "PURPOSE" clause of 19 CSR 25–30.060, "Operating Procedures for Breath Analyzers," the following, *inter alia,* is provided: Prosecuting attorneys have requested that these procedures be included as a rule so they can be introduced in court to show that operators of breath analyzers *have adhered strictly* to the operating procedures set forth and approved by the Department of Health. (emphasis added).

tial 15–minute period before the administration of the breath analyzer tests. *See Green,* 961 S.W.2d at 939; *Edwards,* 769 S.W.2d at 484.

No error of law appears. Point denied.

The judgment is affirmed.

GARRISON, C.J., and MONTGOMERY, J., concur.