Clinton E. WILSON, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 58677.

Missouri Court of Appeals,
Western District.

Jan. 30, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Stacy L. Anderson, Asst. Attys. Gen., Jefferson City, for appellant.

John Edward Price, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., ULRICH, J. and HOWARD, J.

ULRICH, J.

The Director of Revenue appeals the judgment of the trial court setting aside the Director's revocation of Clinton Wilson's driving privileges and ordering their reinstatement. The Director contends that the trial court erred in setting aside the revocation of Mr. Wilson's driver's license pursuant to section 577.041 [1] because its judgment was against the weight of the evidence in that Mr. Wilson was arrested, the arresting officer had probable cause to believe that Mr. Wilson was driving under the influence, and Mr. Wilson failed to submit to a chemical test of his urine.

On the night of January 21, 2000, Officer Paul Thilges of the Kansas City, Missouri Police Department conducted a traffic stop of a vehicle. As he stopped the vehicle, the officer saw Mr. Wilson drive past him in a yellow Camaro. Officer Thilges had had contact with Mr. Wilson a month before and believed that Mr. Wilson did not have a valid driver's license. He, therefore, informed assisting officers Zachary Shroyer and Greg Wiley of his belief, and the officers stopped Mr. Wilson.

Officer Shroyer asked Mr. Wilson for his driver's license, and Mr. Wilson "ap-

---

1. All statutory references are to RSMo Cum. Supp.1998 unless otherwise indicated.

peared to have difficulty getting the license out." As Officer Shroyer determined that Mr. Wilson's license was valid, he noticed that Mr. Wilson was "lethargic" and was slow to answer questions. Officer Wiley observed that Mr. Wilson's eyes were "watery and bloodshot," and both officers detected a "moderate chemical odor" of unknown origin on Mr. Wilson's breath. Officer Shroyer had had contact with Mr. Wilson "numerous times in the past" and believed that he was a "rather sharp individual, coordinated." Mr. Wilson's actions on the night of the 21st, therefore, seemed "irregular" to the officer.

Officer Shroyer then asked Mr. Wilson to exit his vehicle. Officer Shroyer noticed Mr. Wilson's balance was "wobbly" and "unsteady" and that he had difficulty understanding instructions. The officers thought Mr. Wilson was under the influence of alcohol or drugs, so they requested a series of field sobriety tests. Although Mr. Wilson passed the horizontal gaze nystagmus test, he failed the walk and turn test and the one-legged stand test. Officer Shroyer testified that Mr. Wilson "stepped off the line" and "had difficulty touching heel to toe" on the walk and turn test. According to both officers, Mr. Wilson also failed the one-legged stand test. Failure on the field sobriety tests indicated to the officers that Mr. Wilson was under the influence of some controlled substance.

After both officers agreed that Mr. Wilson performed "very poor" on the sobriety tests, they arrested him for driving under the influence and took him into custody. The officers drove Mr. Wilson to the Central Zone police station, and Officer Larry Bewick administered a breath analyzer test to Mr. Wilson. Before administering the test, Officer Bewick testified that he detected a chemical odor on Mr. Wilson's breath and noticed his bloodshot eyes and unsteady balance. Officer Bewick read the implied consent law to Mr. Wilson, and

Mr. Wilson agreed to take the breath analyzer test. The breath analyzer test revealed a blood alcohol content of .000%. Because of Mr. Wilson's physical impairment, Officer Bewick then contacted Officer Ralph Stewart, a Drug Recognition Expert, to determine if other drugs were responsible for Mr. Wilson's physical symptoms of intoxication.

Shortly after Officer Stewart began his examination, Mr. Wilson stated that he needed to urinate. The officer read the implied consent form to Mr. Wilson and asked him for a urine sample. He then accompanied Mr. Wilson to the restroom, where Mr. Wilson stood for four minutes before saying he did not need to urinate. The officer then conducted a battery of tests in which Mr. Wilson had to balance, estimate the passage of thirty seconds, touch his fingertip to his nose, and walk and turn. Approximately one hour later, Officer Stewart again asked Mr. Wilson to submit a urine sample, and Mr. Wilson again made no attempt to respond to the request or produce a sample. After Mr. Wilson's failure to produce a urine sample, Officer Stewart explained that because an hour had passed between requests for a urine sample he considered failure to produce the sample was a refusal to submit a valid test.

The Director revoked Mr. Wilson's driving privileges for one year for refusal to submit to a chemical test as required by section 577.041. Thereafter, Mr. Wilson filed his petition for a hearing before the trial court under section 577.041.4. Following a hearing, the trial court set aside the Director's license revocation and ordered Mr. Wilson's driving privileges reinstated. This appeal by the Director followed.

 The standard of review in this case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Thus, the trial court's decision will be affirmed un-

less it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law. *Id.* at 32. An appellate court should set aside a judgment on the basis that it is against the weight of the evidence only when it has a firm belief that the judgment is wrong. *Sutton v. Director of Revenue,* 20 S.W.3d 918, 923 (Mo.App. S.D.2000). "[D]eference to the trial court's findings is not required when the evidence is uncontroverted and the case is virtually one of admitting the facts or when the evidence is not in conflict." *Id.* (citation omitted).

■ When reviewing the revocation of a driver's license for refusal to submit to a chemical test, the trial court shall determine only the following: 1) whether the driver was arrested, 2) whether the officer had reasonable grounds to believe that the operator was driving while in an intoxicated or drugged condition, and 3) whether the operator refused to submit to chemical testing. § 577.041.4; *Nightengale v. Director of Revenue,* 14 S.W.3d 267, 269 (Mo. App. W.D.2000). The Director of Revenue has the burden of proof, and failure to satisfy the burden will result in reinstatement of the driver's license. *Nightengale,* 14 S.W.3d at 269. If the court determines any issue not to be in the affirmative, it shall order the Director to reinstate the license or permit to drive. § 577.041.5; *Nightengale,* 14 S.W.3d at 269.

In this case, the Director satisfied the burden of proof supporting revocation of Mr. Wilson's driver's license. First, the facts were undisputed that Mr. Wilson was arrested on January 21, 2000. After observing Mr. Wilson and conducting three field sobriety tests, Officers Shroyer and Wiley arrested Mr. Wilson for driving under the influence and transported him to the Central Zone police station.

■ Secondly, the Director showed that the officers had reasonable grounds to believe that Mr. Wilson was driving while in an intoxicated or drugged condition. "Reasonable grounds" is virtually synonymous with probable cause. *Terry v. Director of Revenue,* 14 S.W.3d 722, 724 (Mo. App. W.D.2000). In determining whether reasonable grounds existed, the court must evaluate the situation from the viewpoint of a cautious, trained, and prudent police officer at the scene at the time of the arrest. *Id.* Officers Shroyer and Wiley testified that Mr. Wilson was "lethargic," that his eyes were "watery and bloodshot," and that he performed "very poor" on two of three field sobriety tests. They also stated that Mr. Wilson's balance was "unsteady" and "wobbly" and that he had difficulty following instructions. Additionally, the officers testified that they detected a "moderate chemical odor" on Mr. Wilson's breath. The probable cause determination by Officers Shroyer and Wiley that Mr. Wilson was driving while under the influence of drugs was not precluded by Mr. Wilson subsequently passing the breath analyzer examination. *See Duffy v. Director of Revenue,* 966 S.W.2d 372, 380 (Mo.App. W.D.1998). Both officers testified that based on their observations of Mr. Wilson and his poor performance on the field sobriety tests, they believed Mr. Wilson was "under the influence of something" and "intoxicated in some way." Sufficient evidence was, therefore, presented that the officers had reasonable grounds to believe Mr. Wilson was driving while in an intoxicated or drugged condition.

■ Finally, the Director proved the final element of section 577.041, that Mr. Wilson refused to submit to chemical testing. The implied consent law, section 577.020, reads:

1. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.020 and 577.041, a chemical test or tests of the person's

breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood pursuant to the following circumstances:

1) if the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition.

§ 577.020.1. A driver who is advised of his rights under the implied consent law but declines to take a chemical test is deemed to have refused the test unless he objectively and unequivocally manifests that he misunderstands the warnings and is denied clarification. *Duffy*, 966 S.W.2d. at 382 (citation omitted). Section 577.020.2 allows an officer to request up to two chemical tests. § 577.020.2; *Duffy*, 966 S.W.2d. at 381–382; *Snow v. Director of Revenue*, 935 S.W.2d 383, 386 (Mo.App. S.D.1996).

■ After being arrested and transported to the Central Zone police station, Mr. Wilson was requested and agreed to submit to a breath analyzer test. The test revealed that Mr. Wilson's blood alcohol content was .000%. Because Mr. Wilson exhibited sufficient physical impairment, Officer Bewick, the officer who administered the breath analyzer test, then contacted Officer Stewart, a Drug Recognition Expert, to determine if other drugs were responsible for Mr. Wilson's condition. As Officer Stewart began his examination of Mr. Wilson, Mr. Wilson stated that he had to urinate. Officer Stewart read the implied consent form to Mr. Wilson, which contained a warning of the consequences of his refusal to submit to the testing, and asked Mr. Wilson for a urine sample. The officer accompanied Mr. Wilson to the restroom, and after approximately four minutes, Mr. Wilson stated that he no longer had to urinate. Officer Stewart then resumed his examination of Mr. Wilson and after approximately one hour, again requested a urine sample from Mr. Wilson. Officer Stewart again told Mr. Wilson of the "ramifications under implied consent" and Mr. Wilson did not respond to the request or give a sample. Mr. Wilson's actions after being informed of his rights and warned of the consequences of refusing to take a chemical test constituted a refusal to submit to the urine test. The Director, therefore, proved that Mr. Wilson failed to submit to chemical testing, the final element supporting his revocation of Mr. Wilson's driver's license.

The evidence in this case was uncontroverted. The Director having satisfied the burden of proof, the trial court erred in setting aside the revocation of Mr. Wilson's driving privileges. Accordingly, the judgment of the trial court is reversed, this case is remanded, and the trial court is directed to reinstate the Director's revocation of Mr. Wilson's driving privileges.

BRECKENRIDGE, P.J., and HOWARD, J., concur.