**Johnny E. DANIELS, Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

**No. 23702.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 26, 2001.

Motion for Rehearing and/or Transfer
Denied May 18, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan L. Brown., Asst. Atty. Gen., Jefferson City, for Appellant.

Dennis P. Wilson, Parsons and Wilson, P.C., Dexter, for Respondent.

Before BARNEY, C.J., PREWITT, J., and GARRISON, J.

PER CURIAM.

The Director of Revenue ("Director") appeals from the circuit court's judgment which reinstated the driving privileges of Johnny E. Daniels ("Daniels"). Director suspended Daniels' driving privileges pursuant to section 302.505 after he was arrested for driving while intoxicated.[1] Director upheld the suspension following an administrative hearing. *See* § 302.530. Daniels sought a trial *de novo* pursuant to section 302.535. Following a hearing, the circuit court ordered Director to remove the suspension from Daniels' driving record and to reinstate his driving privileges. The court found that the police officer administering the breath analyzer test failed to comply with the "required fifteen

---

1. Statutory references are to RSMo Cum. Supp.1998, unless otherwise set out.

minute observation period before performing the breath test." *See,* generally, 19 C.S.R. § 25–30.060 (2001). Director raises one point of court error, discussed below.

■ "The judgment of the trial court will be affirmed by this Court unless there is no substantial evidence to support it, it is against the manifest weight of the evidence, or unless it erroneously declares or applies the law." *Krtek v. Director of Revenue,* 975 S.W.2d 468, 469 (Mo.App. 1998); *Riggin v. Director of Revenue,* 25 S.W.3d 695, 697 (Mo.App.2000). "In order to suspend an individual's driving privileges the Director must show by a preponderance of the evidence that the driver was arrested on probable cause of driving while intoxicated, and that the driver's BAC surpassed the legal limit of .10% at the time of arrest." *Hansen v. Director of Revenue,* 22 S.W.3d 770, 772–73 (Mo.App. 2000). "When the Director makes a prima facie case, the burden shifts to the driver to rebut the prima facie case by a preponderance of the evidence." *Id.* The foundational requirements for the admission of a breathalyzer test result are that the test was performed: (1) by following the techniques and methods approved by the Department of Health; (2) the machine operator held a valid permit; and (3) the equipment and devices used to administer the test were approved by the Department of Health. *Wisdom v. Director of Revenue,* 988 S.W.2d 127, 129 (Mo.App.1999); *Farr v. Director of Revenue,* 914 S.W.2d 38, 40 (Mo.App.1996). As set out in 19 C.S.R. § 25–30.011(5) (2001), "[b]reath analyzers shall be operated strictly in accordance with the procedures set forth in 19 CSR 25–30.060."

The record shows that on June 4, 1999, Officer Christopher Foster of the Dexter Police Department observed a vehicle driving at an excessive speed in a 35 mile per hour zone. The vehicle was weaving from side to side and ran off the road on at least one occasion. Officer Foster stopped the vehicle at approximately 12:12 a.m. Daniels was the driver. Upon observing Daniels, Officer Foster noticed an odor of alcohol on his breath, his speech was slurred, and his eyes were watery and bloodshot. Daniels failed the gaze nystagmus test and Officer Foster ended the walk-and-turn and one-legged stand tests for safety reasons, as Daniels fell during these tests. Daniels was then placed under arrest at 12:22 a.m. To facilitate the search of Daniels' vehicle, Officer Foster placed Daniels in the back passenger seat of his patrol car. He was already handcuffed. Officer Foster acknowledged in his testimony that Daniels was within his line of vision from the time he placed Daniels under arrest until Daniels took the breath test. Officer Foster and another police officer then searched Daniels' vehicle. After the search Daniels was transported to the police station, a minute's drive away. At 12:34 a.m., a breath test was administered on Daniels and the test results on the Intoxilyzer 5000 registered .152 percent blood alcohol content (BAC) by weight.

At the hearing, Daniels testified that he had consumed five or six beers between the period 6:30 p.m. to 12:00 a.m. He related that he remained in the patrol car for two or three minutes while police officers searched his car. He acknowledged that during this time he was not within eyesight of the police officers and related that he was "belching and burping." Daniels also acknowledged that he was "bringing air and contents of [his] stomach up into [his] mouth during that time period." However, on cross-examination he denied smoking, eating or "throwing up" while in the patrol car.

■ In his sole point on appeal, Director maintains that the trial court erred in its findings because Daniels failed to

rebut the Director's prima facie case in that no foundational objection was made to the admissibility of the breathalyzer, test and that Daniels failed to show how either " 'belching' " or " 'bringing the contents of his stomach into his mouth' would have affected the test results." The trial court made no findings of fact or conclusions of law in support of its judgment outside of those findings setting out how police officers failed to observe Daniels for the requisite 15 minute observation period prior to administering the breath analysis test. In this respect, the record supports the trial court's findings. Both Forms # 5 and # 7, set out in 19 C.S.R. § 25–30.060 (2001), provide that the "[s]ubject be observed for at least 15 minutes" and that there be "[n]o smoking or oral intake of any material during this time; if vomiting occurs, start over with the 15 minute observation period." *See Green v. Director of Revenue,* 961 S.W.2d 936, 939 (Mo.App. 1998). "The fifteen-minute observation requirement seeks to ensure the breathalyzer's accuracy by preventing smoking, vomiting, or oral intake of any type so that no driver's license suspension or revocation is based on false proof of intoxication." *Hansen,* 22 S.W.3d at 773. Nevertheless, this does not end our analysis. Even if Daniels was not observed every moment of the fifteen minutes immediately prior to his taking the breath analyzer examination, Daniels testified that at no time did he either smoke, place anything into his mouth, or vomit. "When the record shows that the purpose of the 15–minute observation requirement is fulfilled, courts admit the test results." *Id.* "In determining whether the 15 minute rule had been satisfied, the court [focuses] on the rule's purpose more than concerns about rote procedure." *Id.; Holley v. Lohman,* 977 S.W.2d 310, 312 (Mo.App.1998). While Daniels testified that during the two or three minutes he was in the patrol car, he was belching and "bringing air and contents of [his] stomach up into [his] mouth," this does not constitute vomiting, which would have invalidated the initial breath analyzer examination under the foregoing regulations. "Vomit" has been described as, "to disgorge (the contents of the stomach) through the mouth." WEBSTER'S NEW COLLEGIATE DICTIONARY (1977). Here, Daniels emitted nothing *through* his mouth at the time he purportedly brought up air and contents of his stomach into the mouth. Additionally, the exact nature of the "contents" he brought from his stomach into the mouth was not set out in the evidence.

The purpose of the 15–minute observation period has been satisfied. *Holley v. Lohman,* 977 S.W.2d at 310. The Director made a prima facie case that Daniels' BAC was at least .10% by weight. *Hansen,* 22 S.W.3d at 774. This evidence was not rebutted. The judgment was against the weight of the evidence. *Krieger v. Director of Revenue,* 14 S.W.3d 697, 703 (Mo. App.2000).

The judgment is reversed and the cause remanded to the trial court with directions to reinstate Director's suspension of Daniels' driving privileges.