Jared K. **INNIS,** Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI,** Appellant.

**No. WD 60238.**

Missouri Court of Appeals, Western District.

Aug. 30, 2002.

Jeffrey S. Eastman, Gladstone, for Respondent.

Jeremiah W. (Jay) Nixon, Attorney General, Sarah E. Ledgerwood, Assistant Attorney General, Jefferson City, for Appellant.

Before: BRECKENRIDGE, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

The Director of Revenue appeals from the trial court's reinstatement of Jared Innis's driving privileges following a revocation for refusal to take a chemical test. The Director's sole point on appeal is that the trial court erred in sustaining Innis's petition to set aside the Director's action because the judgment is against the weight of the evidence and erroneously applies the law in that the Director established her prima facie case pursuant to § 577.041.[1] We reverse.

## Facts

Officers Walter Nichols and Christopher Diemer of the Platte City police department responded to the area of First and Paxton in Platte City, Platte County, Missouri, on January 24, 2001. They received a careless driving complaint from dispatch at 1:45 a.m. Dispatch stated that a white flatbed tow truck was driving carelessly in that general vicinity. The officers arrived at the scene at approximately 1:50 a.m. Upon arriving at the scene, they found a white flatbed tow truck, running, backed up to a pickup truck. The driver was attaching a cable, preparing to tow the pickup truck. No one else was assisting the tow truck driver with the pickup and no one was inside the tow truck. Further, when the officers ran the two truck license plates, they were registered to Innis. There was a small group of witnesses standing near the scene. Those witnesses all told the officers that Innis had been driving the white flatbed tow truck when it arrived on the scene.

The officers approached Innis and informed him of the reckless driving complaint. Innis stated, "I wasn't driving carelessly. I just came to tow the truck." The officers noticed that Innis had a very strong smell of alcohol on his breath. They could smell the odor from approximately five feet away. Innis's eyes were watery, bloodshot and staring. Innis swayed, stumbled, and had a hard time standing. Innis indicated to Officer Nichols that he had been driving that night. Innis admitted he had consumed two or three beers that evening.

Based upon Innis's appearance and behavior, Officer Nichols conducted field sobriety tests. First, Nichols conducted the nystagmus gaze test. Innis was unable to successfully complete the nystagmus gaze test. He could not even follow the finger of the officer conducting the test. Next, Officer Nichols conducted the walk and turn test. Innis was not able to successfully complete the test. He started before told to begin, used his arms for balance and failed to walk heel to toe. Finally, Officer Nichols conducted the one leg stand test. Innis was unable to complete this last test successfully. He swayed while balancing, put his foot down, and used his arms to help balance.

Based on the foregoing factors, Officer Nichols concluded that Innis was intoxicated. The officers then tried to place Innis under arrest. However, Innis took off running across the gravel lot. Officer Diemer caught up with Innis, they fell to the ground, and a struggle ensued. The officers were finally able to control Innis and transport him to the police station around 2:10 a.m.

At the police station, Innis was read his Miranda rights. He was also informed of the Implied Consent Law. Officer Nichols read the required questions on the consent form to Innis. Innis refused the test and

1. All statutory references are to RSMo 2000.

became argumentative with the officers. Innis did, however, indicate that he understood he might lose his license due to his refusal to take the test. Officer Nichols subsequently asked Innis several more times if he wished to take the test. Innis refused each time. Officer Travis Davies set up the breath test for Nichols. Again, Innis refused to take the test. Davies pushed the refusal button on the Breathalyzer machine. Innis was booked and his license was revoked pursuant to § 577.041.

Innis put on no evidence at the trial, but moved to set aside the Director's action because the Director had not entered into evidence the municipal ordinance under which Innis was arrested. The trial court granted Innis's motion and ordered the reinstatement of Innis's license. This appeal by the Director follows.

## Standard of Review

In *Wilson v. Director of Revenue,* 35 S.W.3d 923, 925–26 (Mo.App. W.D.2001), we stated the standard of review to be as follows:

> The standard of review in this case is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Thus, the trial court's decision will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law. An appellate court should set aside a judgment on the basis that it is against the weight of the evidence only when it has a firm belief that the judgment is wrong. "[D]eference to the trial court's findings is not required when the evidence is uncontroverted and the case is virtually one of admitting the facts or when the evidence is not in conflict."

(Citations omitted.)

## Discussion

The Director's sole point on appeal is that the trial court erred in sustaining Innis's petition to set aside the Director's action because the judgment is against the weight of the evidence and erroneously applies the law in that the Director established her prima facie case pursuant to § 577.041.

Section 577.041 provides, in relevant part, as follows:

> 4. If a person's license has been revoked because of the person's refusal to submit to a chemical test, such person may petition for a hearing before a circuit or associate circuit court in the county in which the arrest or stop occurred. The person may request such court to issue an order staying the revocation until such time as the petition for review can be heard. If the court, in its discretion, grants such stay, it shall enter the order upon a form prescribed by the director of revenue and shall send a copy of such order to the director. Such order shall serve as proof of the privilege to operate a motor vehicle in this state and the director shall maintain possession of the person's license to operate a motor vehicle until termination of any revocation pursuant to this section. Upon the person's request the clerk of the court shall notify the prosecuting attorney of the county and the prosecutor shall appear at the hearing on behalf of the director of revenue. At the hearing the court shall determine only:
>
> (1) Whether or not the person was arrested or stopped;
>
> (2) Whether or not the officer had:
>
> (a) Reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; or
>
> (b) Reasonable grounds to believe that the person stopped, being under the

age of twenty-one years, was driving a motor vehicle with a blood alcohol content of two-hundredths of one percent or more by weight; or

(c) Reasonable grounds to believe that the person stopped, being under the age of twenty-one years, was committing a violation of the traffic laws of the state, or political subdivision of the state, and such officer had reasonable grounds to believe, after making such stop, that the person had a blood alcohol content of two-hundredths of one percent or greater; and

(3) Whether or not the person refused to submit to the test.

5. If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive.

■ In the present case, under § 577.041.4, the court had to determine 1) whether or not Innis was arrested or stopped; 2) whether or not the officer had reasonable grounds to believe that Innis was driving a motor vehicle while in an intoxicated or drugged condition; and 3) whether or not Innis refused to submit to the test. *Nightengale v. Director of Revenue,* 14 S.W.3d 267, 269 (Mo.App. W.D. 2000). The Director has the burden of proof, and failure to satisfy the burden will result in the reinstatement of the license to drive a motor vehicle. *Id.*

The main issue before the court, as discussed in the parties' briefs, is whether the Director was required to introduce into evidence the municipal ordinance under which Innis was arrested. However, because we will affirm the trial court's judgment under any reasonable theory supported by the evidence, *Kidd v. Wilson,* 50 S.W.3d 858, 862 (Mo.App. W.D.2001), we discuss whether the Director met her burden of proof on all of the requisite elements of § 577.041.4.

In *Tidwell v. Director of Revenue,* 931 S.W.2d 488 (Mo.App. S.D.1996), the southern district addressed the issue at bar in a slightly different context. In *Tidwell,* the defendant's driving privileges were revoked for driving while intoxicated. *Tidwell,* 931 S.W.2d at 489. The municipal ordinance pursuant to which the defendant was arrested was not introduced into evidence during the trial de novo. *Id.* at 490. Following the trial de novo, without making any findings of fact or conclusions of law, the trial court ordered reinstatement of the defendant's driving privileges. *Id.* The Director appealed, contending that the trial court erred in setting aside the revocation of the defendant's driving privileges because uncontroverted evidence established all elements of an administrative driver's license revocation. *Id.* The defendant argued that the trial court's judgment was not erroneous because the ordinance under which he was arrested was not introduced into evidence. *Id.* at 491. However, under the relevant statute, the trial court was required to determine only 1) whether the defendant was arrested, 2) whether the arresting officer had probable cause for the arrest, and 3) whether the defendant's blood alcohol content was at least .10 percent by weight. *Id.* at 490. The court held that the admission of the ordinance was not necessary. *Id.* at 491. The court reasoned as follows:

Without contradiction or objection, [the arresting officer] testified that he arrested [the defendant] for violation of an ordinance of the city of Sikeston. This court has previously held that when judicially reviewing the administrative revocation of a driver's license, it is irrelevant whether the arrest was valid. *Sullins v. Director of Revenue,* 893 S.W.2d 848, 850[3] (Mo.App.1995). As the administrative revocation of [the defendant's] driver's license is a civil

proceeding, the Fourth Amendment's exclusionary rule is inapplicable. *Id.* Consequently, whether [the defendant's] arrest was valid as being pursuant to an existing ordinance is not a fact Director had to prove. *Id.* at 491–92. The court held that the Director carried her burden and the defendant offered nothing in rebuttal. *Id.* at 492. Accordingly, there was no evidence to support the trial court's judgment and it was against the weight of the evidence. *Id.* The court reversed the trial court's judgment and reinstated the Director's revocation of the defendant's driving privileges. *Id.*

Similarly, in the present case, we find that the Director was not required to introduce into evidence the municipal ordinance under which Innis was arrested.

In order for the Director to establish that an arrest occurred, the Director was required to submit substantial evidence establishing either that the officers physically restrained Innis or that he submitted to their custody. *Callendar v. Director of Revenue*, 44 S.W.3d 866, 869 (Mo.App. W.D.2001). Officer Nichols' uncontroverted testimony established that he and Officer Diemer physically restrained Innis and took him to the police station. Furthermore, as in *Tidwell*, Officer Nichols testified that he arrested Innis for violation of a municipal ordinance.

As the Director points out, Innis's reliance on *Queen of Diamonds, Inc. v. Quinn*, 569 S.W.2d 317 (Mo.App.1978), is misplaced. In *Queen of Diamonds*, the excise commissioner of the City of St. Louis appealed the trial court's reversal of the commissioner's decision to revoke a tavern's liquor license. *Queen of Diamonds*, 569 S.W.2d at 318. On appeal, the court held that the commissioner's failure to include in the record before the trial court the municipal ordinances pursuant to which the liquor license was revoked prevented both the trial court and the appellate court from reviewing the application or constitutionality of the ordinances and rendered insubstantial and incompetent the evidence on which the license revocation was based. *Id.* at 319. *Queen of Diamonds* is distinguishable from the present case because that case involved the revocation of a liquor license, which is based on municipal ordinances, so in such cases it would make sense that the court would need those ordinances to be part of the record. Revocation of a driver's license is based on state law, and it is not necessary to have the ordinance pursuant to which Innis was arrested included in the record.

The Director was next required to prove that the officer had reasonable grounds to believe that Innis was driving a motor vehicle while in an intoxicated or drugged condition. "The quantum of proof required to show reasonable grounds is substantially less than that required to establish guilt beyond a reasonable doubt, and the standard is one of a 'cautious, trained and prudent police officer at the time of arrest.'" *Dickerson v. Wilson*, 15 S.W.3d 56, 59 (Mo.App. W.D.2000) (citation omitted). Mere suspicion is not sufficient, but absolute certainty is not required. *Id.* Reasonable grounds to arrest for driving while intoxicated may exist even when evidence of actual driving is based on circumstantial evidence. *Id.* Although the officers did not actually observe Innis driving a vehicle, witnesses told the officers that Innis had been driving. Innis also indicated to Officer Nichols that he had been driving that night. The license plates were registered to Innis. The officers noticed a very strong smell of alcohol on Innis's breath. Innis's eyes were watery, bloodshot and staring. Innis swayed, stumbled, and had a hard time standing.

Innis failed several field sobriety tests. All of these circumstances indicate that the officers had reasonable grounds to believe that Innis was driving a motor vehicle while intoxicated.

■ Last, the Director was required to show that Innis refused to submit to the test. "In the context of the Implied Consent Law, a 'refusal' to submit to a chemical test means declining to take the test of one's own volition when requested to do so." *Long v. Director of Revenue,* 65 S.W.3d 545, 549 (Mo.App. W.D.2001). Officer Nichols testified that he read the Implied Consent Law from the form to Innis, and Innis then stated several times that he refused to take the test. In addition, Officer Travis Davies, who set up the Breathalyzer test, testified that Innis told him that he refused to take the test.

We find that the Director carried her burden, and her evidence was uncontroverted. There was no evidence to support the trial court's judgment and it was against the weight of the evidence. If the court entered its judgment on the basis that the municipal ordinance was not admitted into evidence, then the judgment also misapplied the law.

The judgment of the trial court is reversed and the case remanded with directions to reinstate the Director's revocation of Innis's driving privileges.

BRECKENRIDGE, P.J., and HOLLIGER, J., concur.