Patricia ENGELAGE, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 65081.

Missouri Court of Appeals,
Western District.

June 13, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 2006.

Katie L. Ambler, Assistant Attorney General, Jefferson City, MO, for appellant.

Jeffrey S. Eastman, Gladstone, MO, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, THOMAS H. NEWTON, Judge and PAUL M. SPINDEN, Judge.

JOSEPH M. ELLIS, Judge.

The Director of Revenue ("Director") revoked Patricia J. Engelage's driver's license based upon a law enforcement officer's probable cause determination that Engelage was driving while intoxicated. Engelage sought review, and after conducting an evidentiary hearing, the trial court ordered the Director to reinstate Engelage's driving privileges. The Director appeals. The judgment is affirmed.

■ Appellate review of this court-tried civil matter is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Innis v. Dir. of Revenue*, 83 S.W.3d 691, 694 (Mo.App. W.D.2002). Accordingly, " 'the trial court's decision will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it misstates or misapplies the law.' " *Id.* (quoting *Wilson v. Dir. of Revenue*, 35 S.W.3d 923, 925–26 (Mo.App. W.D.2001)); *see also Walker v. Dir. of Revenue*, 137 S.W.3d 444, 446 (Mo. banc 2004). "In determining whether there is substantial evidence supporting the judgment of the trial court we defer to the ability of the trial court to ascertain the facts. The trial court is accorded wide discretion even if there is evidence in the record which would support a different result." *Krtek v. Dir. of Revenue*, 975 S.W.2d 468, 471 (Mo.App. S.D.1998) (internal citation and quotation marks omitted). "In a driver's license revocation case, a trial court has the prerogative when weighing witness credibility, to accept or reject all, part, or none of the testimony of any witness." *Long v. Dir. of Revenue*, 65 S.W.3d 545, 548 (Mo.App. W.D.2001) (internal quotation marks omitted). Even so, this court's deference "is not limited to the issue of credibility of witnesses, but also to the conclusions of the trial court." *Id.* "[W]here evidence is presented which, if believed, would support a finding in favor of one party, but contrary or inconsistent evidence is also presented, then it is up to the judge to resolve the factual issues, including determining the credibility of witnesses." *Hampton v. Dir. of Revenue*, 22 S.W.3d 217, 220 (Mo.App. W.D.2000).

■ Meanwhile, "[a]ppellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong," *Murphy*, 536 S.W.2d at 32, keeping in mind that "[t]he mere existence of evidence from which another conclusion might have been reached is not enough to demonstrate that the holding of the trial court is contrary to the weight of the evidence." *Purdun v. Purdun*, 163 S.W.3d 598, 601–02 (Mo.App. W.D.2005). Moreover, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found

in accordance with the result reached." Rule 73.01(c). The record does not disclose any request by the parties for specific findings of fact and conclusions of law, and none were issued. Since "neither party requested and the trial court did not make specific findings of fact and law, the trial court is assumed to have made findings consistent with the judgment issued." *Pride v. Lewis,* 179 S.W.3d 375, 378 (Mo. App. W.D.2005).

Stated in the light most favorable to the trial court's judgment, *York v. Dir. of Revenue,* 186 S.W.3d 267, 269 (Mo. banc 2006), the testimony at trial indicated that at approximately 12:56 a.m. on July 29, 2004, Platte County Sheriff's Deputy Travis Davies was on patrol in the vicinity of Barry Road and Waukomis in southern Platte County. Davies was approaching the eastbound traffic signal on Barry Road at Ambassador Drive when he observed a tan Chrysler Sebring coming off Ambassador and turning left onto eastbound Barry Road. According to Davies, the Sebring made a wide left-hand turn, nearly making contact with the opposite curb. At some point after the turn had been completed, Davies observed that the Sebring's taillights were not working, and he initiated a traffic stop by activating his overhead emergency lights and audible siren. In response to these signals, the Sebring pulled into the parking lot of a nearby shopping center.

Davies then exited his patrol car and made contact with the driver of the Sebring, who turned out to be Engelage. According to Davies, once the driver rolled down her window, he immediately smelled a strong odor of an intoxicating beverage coming from inside the car and noticed that the driver's eyes were watery and bloodshot. Davies identified himself to the driver and provided her with the reasons for the stop. When he asked her to produce her driver's license and proof of insurance, Engelage promptly did so with no difficulty.

Davies then asked Engelage to step out of the Sebring so he could perform some field sobriety tests on her to determine whether it was safe for her to continue driving. Engelage responded that such tests were unnecessary as she was right around the corner from her home. When Davies repeated his request for Engelage to leave her vehicle, Engelage told Davies to take her driver's license, return to his patrol car, and check it out. Davies did return to his vehicle, but instead of simply running her driver's license, called for backup. In response to Davies' request, Sergeant Anderson arrived a few minutes later. Upon Anderson's arrival, Davies returned to Engelage's vehicle and spoke with her again. Engelage then did as she was asked and exited her vehicle.

Once Engelage had left her vehicle and was standing next to it, Davies reiterated his request that she submit to field sobriety testing. Engelage then walked around her vehicle toward Anderson, once again explaining that field tests were unnecessary because she was just around the corner from her home, and also adding that such tests were unwarranted since she wasn't drunk.

On direct examination, Davies testified that he could not remember anything about the way Engelage got out of her vehicle, nor could Davies recall anything about the way Engelage walked or moved once she had left the vehicle. He did, however, claim to remember seeing that she was wearing something "like an ID" badge around her neck containing an advertisement for a bar, the reverse side of

which said "Very Intoxicated People."[1] On cross-examination, however, Davies conceded that, as far as he could tell, Engelage "had no problems" maintaining her balance or with her ability to walk or turn and that he had not checked any of the boxes on the Alcohol Influence Report he had prepared which would have indicated that she was swaying, wobbling, stumbling, staggering, or falling, or that she had any other difficulty ambulating.

Davies then informed Engelage that she was under arrest for driving while intoxicated. On cross-examination, Davies testified that the indicia of intoxication on which he relied in making his probable cause determination were (1) the odor of alcohol coming from Engelage's car and person; (2) Engelage's watery, bloodshot eyes; and (3) Engelage's face being "very flushed." As to the last of these indicia, Davies explained: "I mean, you can tell that. I don't have a copy of her mug shot picture, but by the mug shot picture she had, her cheeks are very flushed. Her skin is very—has a dark reddish tint to it." Davies subsequently admitted on cross examination that the various written reports he had prepared contained no indication whatsoever that Engelage's face was flushed at or after the time of her arrest.

The record also shows that there were several other material discrepancies between Davies' trial testimony and the information contained in the incident report prepared by Davies after his encounter with Engelage. For example, while the report states that Davies saw the Sebring "swerve[ ] several times between the white lines" before he activated his siren and emergency lights, Davies made no such claim at trial. Furthermore, at trial, Davies testified that he noticed the Sebring's taillights were not operating as soon as it completed the left turn from Ambassador onto eastbound Barry Road. However, in his report, Davies stated that it was not until after the Sebring had completed the turn and he had later caught up with it further down Barry Road that he noticed the vehicle did not have any working taillights. Likewise, Davies' incident report states that Engelage "had a very distinct slur to her speech." At trial, though, Davies testified only that he "could tell there was a slur in her speech." On redirect, the Director elicited testimony from Davies that there were certain parts of the evening that he remembered and other parts that he had trouble remembering. The trial court was clearly concerned about this, as it asked Davies, on the record, whether he had a personal recollection of the events of July 29, 2004, or whether he was relying upon his written report and also noted that "[t]here have been numerous times that you've been reading directly from the report."

After he handcuffed her and checked the cuffs for proper fit, Davies escorted Engelage to his patrol car. Davies testified that, while seated in the patrol car, Engelage was very polite and tried to make small talk. When they arrived at the Platte County Jail, Davies gave Engelage her Miranda warnings. After subsequently being advised of her rights under Missouri's Implied Consent Law, at ap-

---

1. According to a written incident report prepared by Davies after his encounter with Engelage, which was admitted into evidence as part of the Director's Exhibit 1, digital photographs were taken of the "ID badge" purportedly worn by Engelage. However, the record before us contains no such photographs and is also devoid of any affirmative indication that any such photographs were before the trial court either. As "[a]ll evidentiary omissions in the record on appeal are presumed to support the trial court's decision," *Thomas v. Dir. of Revenue*, 874 S.W.2d 427, 429 (Mo. App. W.D.1994), we consider this to be unfavorable to the Director.

proximately 1:27 a.m., Engelage informed Davies that she would not submit to a chemical test of her breath. After her refusal to submit to the chemical test, Davies asked Engelage a series of questions, including whether she had been drinking earlier that evening. According to Davies, Engelage told him she had consumed approximately three beers at a bar called Johnny Dare's between 7:00 p.m. and 11:00 p.m. on July 28, 2004.

The Director revoked Engelage's license for one year for refusing to take a chemical breath test. As authorized by section 577.041.4,[2] on August 20, 2004, Engelage timely filed a Petition for Review of the Director's action in the Circuit Court of Platte County, which tried the matter on December 16, 2004. Only one witness testified at the hearing (Davies), who was cross-examined by counsel for Engelage. The Director also offered certain certified records from the Department of Revenue, which the court received into evidence as Exhibit 1. On December 22, 2004, the circuit court entered its judgment in favor of Engelage and against the Director. The Director filed a Motion for Leave to File Notice of Appeal Out of Time, which we granted on February 22, 2005. That led to this appeal, which is authorized by section 302.311.

█ In her sole point relied on, the Director argues that the trial court erred in reinstating Engelage's driving privileges because its judgment was unsupported by substantial evidence and was against the weight of the evidence.

"Section 577.041.3 mandates that the Director revoke, for one year, the driver's license of a person under arrest for DWI for refusing, when requested by the arresting officer, to submit to a chemical test, authorized by section 577.020." *Flaiz v. Dir. of Revenue*, 182 S.W.3d 244, 248 (Mo.App. W.D.2005). "If a person's license has been revoked because of the person's refusal to submit to a chemical test [as allowed pursuant to § 577.020], such person may petition for a hearing before a circuit or associate circuit court in the county in which the arrest or stop occurred." § 577.041.4. As applicable here, at such a hearing "the court shall determine only" the following three issues:

(1) Whether or not the person was arrested or stopped;

(2) Whether or not the officer had . . . [r]easonable grounds[3] to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; . . . and

(3) Whether or not the person refused to submit to the test.

*Id.; see also Wilson*, 35 S.W.3d at 926. "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." § 577.041.5. "The Director of Revenue has the burden of proof" as to all three issues, "and failure to satisfy the burden will result in reinstatement of the driver's license." *Wilson*, 35 S.W.3d at 926; *see also Hinnah*, 77 S.W.3d at 620.

In its judgment, the trial court stated that after "having considered the evidence offered by the parties, and being fully advised upon the law and the facts," the court "determined the issues specified in Section 577.041 RSMo., not to all be in the affirmative." In their briefs, the parties

---

**2.** Unless indicated otherwise, all statutory references are to RSMo 2000.

**3.** As used in section 577.041.4, "reasonable grounds" is virtually synonymous with "prob-able cause." *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); *Brown v. Dir. of Revenue*, 164 S.W.3d 121, 125 (Mo. App. E.D.2005).

do not disagree (just as they did not disagree during the hearing) that Engelage was arrested and that she refused to submit to a chemical test. Therefore, the sole issue for our consideration is whether, on the record before us, the trial court erred in determining that the Director had failed to successfully sustain her burden of proof as to the second issue—namely, whether Davies had reasonable grounds to believe that Engelage was driving the Chrysler Sebring while in an intoxicated condition.

■ Quoting *Marsey v. Director of Revenue*, 19 S.W.3d 176, 177 (Mo.App. E.D. 2000), for the proposition that " '[d]eference to the trial court's findings is not required when the evidence is uncontroverted and the case is virtually one of admitting the facts or when the evidence is not in conflict,' " the Director urges us to weigh the evidence anew and to discount not only the trial court's opportunity to consider the credibility of her one and only live witness at trial, but also its prerogative to believe or disbelieve all or part of any witness' testimony. However, as the statement of facts, *supra*, demonstrates, this is clearly not such a case. Therefore, "deference is due to the trial court's determination." *Hinnah*, 77 S.W.3d at 620. Furthermore, the Director's argument ignores the well-established rule of appellate review that where "neither party requested and the trial court did not make specific findings of fact and law, the trial court is assumed to have made findings consistent with the judgment issued." *Pride*, 179 S.W.3d at 378; *see also Hinnah*, 77 S.W.3d at 621. For both of these reasons, we reject the Director's attempts to characterize the case *sub judice* as one in which the evidence before the trial court was entirely "uncontroverted" or "not in conflict" and which was "virtually one of admitting the facts" presented by the Director's witnesses.

As noted previously, Deputy Davies testified that the indicia of intoxication on which he relied in making his probable cause determination were (1) the odor of alcohol coming from Engelage's car and person; (2) Engelage's watery, bloodshot eyes; and (3) Engelage's face being "very flushed." As to the last indicia, however, Davies admitted that none of the written reports he had prepared contained any indication whatsoever that Engelage's face was flushed at or after the time of her arrest. And this was not the only material discrepancy the trial court heard or observed. Davies' report states that he saw the Sebring swerve several times between the white lines, but he made no such claim at trial. Similarly, Davies' trial testimony regarding when he asked Engelage whether she had been drinking, although somewhat unclear and confusing, appears to be that he didn't ask her until *after* she had refused to submit to a chemical test of her breath at the Platte County Jail. In addition, Davies claimed that there were some events of the evening that he remembered and some he had trouble remembering, which led the trial court to inquire of him whether he was relying on his personal recollection when testifying or his written report because the court had observed him reading directly from the report.

All of these discrepancies bore directly on Davies' credibility and the weight to be given his trial testimony by the trial court. As this court very recently noted:

[I]n order to controvert the Director's case for revocation for a refusal, pursuant to § 577.041, requiring us to defer to the trial court with respect to its conclusions and its resolution of factual issues, including credibility determinations, the driver need only present evidence that is inconsistent with a reasonable belief of the arresting officer that the driver was DWI. There does not have to be evi-

dence controverting each and every indicia of intoxication on which the Director has introduced evidence in support of a finding of probable cause.

*Flaiz,* 182 S.W.3d at 251. *See also Howdeshell v. Dir. of Revenue,* 184 S.W.3d 193, 199 (Mo.App. S.D.2006) (holding that "a legitimate factual dispute or credibility determination is presented by [the] cross-examination of a witness for the Director which raises a legitimate credibility dilemma with respect to a material aspect of the Director's case").

The Director argues that the situation here is very similar to that in *Edmisten v. Director of Revenue,* 92 S.W.3d 270 (Mo. App. W.D.2003). The critical difference, however, is that the Director's evidence in *Edmisten* was uncontradicted by either contrary evidence or cross-examination. *Id.* at 274. The instant appeal is more similar to *Hinnah v. Director of Revenue,* 77 S.W.3d 616 (Mo. banc 2002). In *Hinnah,* the Missouri Supreme Court acknowledged that the Director had introduced evidence, which, if believed by the trial court, was sufficient to support a finding of reasonable grounds to believe Hinnah was driving while intoxicated. 77 S.W.3d at 621. In that regard, the Court pointed to the arresting officer's testimony that he found Hinnah "alone inside a truck with its engine running, parked alongside the interstate, that he had a strong odor of alcohol on his breath, had watery, glassy, bloodshot eyes, had difficulty maintaining his balance, and that he admitted to driv-

ing the vehicle, striking a concrete barrier and flattening the tire." *Id.* The Court, however, found that there was evidence in the record which controverted the Director's evidence of probable cause and supported the trial court's finding that the arresting officer lacked probable cause to arrest Hinnah for driving while intoxicated,[4] stating:

> The trial court had evidence to support a finding of probable cause, but was free as well to draw the conclusion that there was no probable cause. Either conclusion was sustainable under the record, depending upon the trial court's assessment of the credibility of the officer's testimony that Hinnah said he was driving or upon the court's assessment of the evidence of probable cause as to intoxication.

*Id.* at 622.

In this case, while the record might have supported a contrary finding, viewing the evidence in a light most favorable to the trial court's judgment and considering the facts to have been found by the trial court in accordance with its judgment, we conclude that the trial court could reasonably have determined that Davies did not have reasonable grounds to believe that Engelage was driving a motor vehicle while in an intoxicated condition. Because the trial court was free to find either way based on the record, depending on its assessment of the credibility of Davies' trial testimony, we cannot find that the trial court's judg-

4. The Court pointed to the admissions of the arresting officer on cross-examination that he did not see the Hinnah in the driver's seat; that he could not determine from the odor of alcohol the number, recency, quantity, or quality of the alcoholic drinks consumed and that he could not determine whether Hinnah was intoxicated due to it; that Hinnah's bloodshot eyes could not lead him to the conclusion that Hinnah was intoxicated; and that Hinnah's act of balancing himself with the truck door may have been caused by his having just woken up, as well as the inclement weather and questionable footing. *Id.* at 621. While there was evidence that controverted the Director's evidence that Hinnah was driving the vehicle, there was no evidence to controvert the facts that there was an odor of alcohol on Hinnah's breath; that Hinnah had bloodshot, watery eyes; or that he had to balance himself using the truck door. *Id.*

ment was not supported by substantial evidence or was against the weight of the evidence. *See id.; York,* 186 S.W.3d at 272 (noting that even though the evidence was "uncontroverted" as to several indicia of the driver's intoxication, including the smell of alcohol, the fact that the driver's eyes were watery, bloodshot and glassy, and the driver's admission to drinking one or two beers, "the trial court, in its discretion, was free to draw the conclusion that there was no probable cause based upon its assessment of this evidence and the officer's own equivocation of the existence of probable cause.").

The judgment of the trial court setting aside the Director's revocation of Engelage's driver's license and ordering its reinstatement is affirmed.

All concur.